563 A.2d 1121
**David Chalmer TIMNEY**

**v.**

**STATE of Maryland.**

**No. 67, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

Sept. 28, 1989.
Certiorari Denied Jan. 10, 1990.

358

Robert N. Dugan, Assigned Public Defender of Towson (Alan H. Murrell, Public Defender of Baltimore, on brief), for appellant.

Audrey A. Creighton, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and James L. Sherbin, State's Atty. for Garrett County, Oakland, on brief), for appellee.

Argued before WILNER, GARRITY and BLOOM, JJ.

GARRITY, Judge.

The appellant, David Chalmer Timney, was convicted by a jury in the Circuit Court for Garrett County (Thayer, J., presiding) of conspiracy to escape and subsequently sentenced to ten years consecutive to a sentence he was

already serving. He presents the following issues for our review:

I. Whether the trial judge erred in admitting into evidence documents seized from a co-conspirator's cell.

II. Whether the trial judge erred in admitting testimony relating to the appellant's motive and intent.

III. Whether the trial judge's cautionary instructions concerning evidence of motive and intent were adequate.

IV. Whether the evidence was sufficient to support the appellant's conviction for conspiracy to escape.

V. Whether the trial judge properly denied the appellant's motion to dismiss the conspiracy counts.

VI. Whether the trial judge abused his discretion in sentencing the appellant to a term of ten years.

### *Facts*

On or about December 17, 1987, James Richard Farris, an inmate at the Washington County Detention Center, overheard the appellant tell another prisoner that he was going to escape from the detention center aided by an unnamed individual. On December 23, 1987, the appellant and Farris engaged in a discussion with two other inmates, Roger Sills and Jack Richardson, in which the appellant asked Farris if he was interested in joining the others in an escape. The plan at that time involved the appellant having an unnamed acquaintance outside the institution seize a school bus carrying children and hold the children as ransom for the release of detention center inmates.

Farris reported the conversation to Detective Richard Johnson of the Hagerstown Police Department, who told him to continue to find out what he could about the escape plan. At some point between December 23 and 26, 1987, an alternative plan was discussed by the appellant, Farris, Sills, and Richardson. This involved kidnapping Washington County State's Attorney Kenneth Long and his wife and children. The parties agreed that their ultimate destination

would be Mexico, and discussed different routes of travel. The group decided on a New Year's Eve departure date, their theory being that fewer guards would be on duty at that time. An alternative method of escape was discussed, involving having someone outside the institution cut a fence. The appellant inquired of Farris whether he knew of someone who could supply the group with weapons or help his acquaintance on the outside "pull off" the escape.

On December 26 Farris relayed to the authorities that the appellant and "old man Jack" (Jack Richardson) had people outside the institution to assist them in their escape attempt but were still in need of a driver. Farris learned that the appellant's connections on the outside were named Mankins and "Rambo," the latter nickname attributed to the appellant's co-defendant in the case, David Alan Goggin.

The police established an investigative plan whereby Detective Johnson passed to Farris the name and number of "Charlie," Farris being instructed to tell the appellant that "Charlie" was interested in acting as a driver for purposes of the escape. "Charlie" was in reality Corporal Charles Poole of the Maryland State Police Criminal Enforcement Division, Special Assignment Unit. Farris relayed the information to the appellant on December 27, 1987, after which the appellant advised Farris that the appellant and his acquaintance on the outside would "take care of setting everything up" regarding the escape. Co-defendant Goggin eventually contacted Corporal Poole and requested that Poole supply him with a gun, a car, and money.

At some point near Christmas Day, 1987, the appellant told his long-time friend Mary Oster that he was "getting out" and offered to pay her husband $1,000.00 to take him to New Mexico. He also requested that she bring whatever firearms she had in her home to an unspecified location in Hagerstown. In the same telephone conversation the appellant asked Oster's husband, Roger, to bring a pair of wirecutters so that he could break out of jail.

Some time between December 26 and 30, 1987 co-defendant Goggin asked an acquaintance, Cynthia Shank, with whom he was temporarily staying, to relay the phone number of their apartment to a mutual friend, Woodrow Stoddard, then also incarcerated at the Washington County Detention Center. Goggin instructed her to tell Stoddard to pass on the phone number to the appellant.

Additional facts shall be discussed *infra* as necessary to resolve each of the appellant's contentions.

## I.

On December 30, 1987, a deputy at the Washington County Detention Center searched the cell of co-conspirator Jack Richardson and found several sheets of paper on which were written immigration and geographical information about Mexico, one map of Mexico and one map showing routes to Mexico from several American cities.[1] Portions of the documents seized from Richardson's cell read:

> Before entering Mexico you need a Mexican tourist card which is free. Tourists cards are available at the border crossing or your travel agent or airline. You have to demonstrate you're an American or Canadian citizen. A passport, birth certificate, voting card or naturalization papers are all you will need. The tourist card allows you up to 180 days in Mexico.

> \* \* \* \* \* \*

> You can apply for permanent resident immigrado status at any Mexican consulate in the U.S. or the immigration office in Mexico City. The permit can be issued to any foreigner meeting certain requirements having a permanent income ... This permit is issued on a temporary basis but becomes permanent after five years. The permit must be renewed annually for the first five years. After that a permanent immigration status is granted....

---

1. The appellant was not specifically implicated in the text of the notes.

It is a good idea to exchange your dollars to pesos only on an "as needed" basis.

In a pre-trial motions hearing, the appellant objected to the introduction of these documents, characterizing them as statements of a co-conspirator and arguing that, as Richardson was unavailable to be called as a witness and cross-examined, the appellant's right of confrontation was violated.[2] The trial judge denied the appellant's motion *in limine*, stating that the appellant could have subpoenaed Richardson himself and could have sought a continuance to do so. The appellant's objection was renewed at trial and again denied. That denial is the basis for the appellant's first allegation of error.[3]

■ We do not accept the appellant's labeling of the documents as hearsay statements of Richardson. The notes found in Richardson's cell represented tangible evidence, arguably of an act by Richardson in furtherance of the conspiracy to escape, and were entitled to whatever weight the trier of fact was disposed to give them. The State proposes an apt analogy between the notes above and tickets to Mexico, which would unquestionably represent admissible evidence as part of the *corpus delecti* of the crime. *See Gray v. State*, 53 Md.App. 699, 712, 456 A.2d 1290 (1983).

We hold the documents found in Richardson's cell were properly admitted into evidence.

---

2. At the time of the appellant's trial, Richardson was incarcerated in Indiana. The State advised the appellant's counsel that it would not extradite him.

3. On appeal, the appellant attacks the admission of the documents on the additional ground of relevancy. As that was not a basis of his objection below, we will not address it for the first time today. *See* Md. Rule 8–131(a); *Brecker v. State*, 304 Md. 36, 497 A.2d 479 (1985) noting: "[o]ur cases have consistently stated that when an objector sets forth the specific grounds for his objection ... the objector will be bound by those grounds and will ordinarily be deemed to have waived other grounds not specified." *Id.* at 39–40, 497 A.2d 479.

## II.

During the appellant's trial two witnesses for the State testified to requests made by the appellant for hacksaw blades and a gun. Michael Muir testified that sometime in October or November, 1987, the appellant asked him to deliver a silver pistol and hacksaw blades to "some girl in town." Witness Mary Ann Timney, the appellant's niece, testified that in October, 1987, the appellant asked her to deliver hacksaw blades to the Washington County Detention Center. At a pre-trial hearing on the appellant's motion *in limine* and at trial the appellant objected to this testimony, labeling it inadmissible evidence of other crimes or "bad acts." The trial court allowed the testimony as relating to the appellant's motive and intent to leave the detention center. The appellant assigns this as error, arguing that the evidence admitted was more prejudicial than probative.

Generally, evidence of prior crimes or bad acts independent of that for which a defendant is on trial is irrelevant and inadmissible; *Ross v. State*, 276 Md. 664, 669, 350 A.2d 680 (1976); however, there are numerous well recognized exceptions to this rule. *Id.* Such evidence may be admitted when it tends to establish motive, intent, absence of mistake, a common scheme or plan, identity, opportunity, preparation, knowledge or accident. *Id.* at 669, 670–71, 350 A.2d 680; *State v. Faulkner*, 314 Md. 630, 634, 552 A.2d 896 (1989).

To protect the defendant from unfair prejudice, however, the court in *Faulkner* set forth a three-step process for the trial court to follow before admitting evidence of other acts. First, it must determine whether the evidence fits within one or more of the *Ross* exceptions; this is a legal determination and does not involve the exercise of discretion. If one or more of the exceptions apply, the next step is to decide if the accused's involvement in the act is established by clear and convincing evidence. We will review this determination to determine whether the evi-

dence was sufficient to support the trial judge's finding.  If this requirement is met, the trial judge must weigh the necessity for and probative value of the evidence against the undue prejudice likely to result from its admission.  This final step implicates the exercise of the trial court's discretion.

■ Applying *Faulkner*, we first hold that the trial judge was correct in finding the appellant's request for a gun and hacksaw blades evidence of the appellant's intent to escape, and therefore as falling within one of the *Ross* exceptions.[4]  Both Muir and Mary Ann Timney testified to knowing the appellant well and clearly reiterated his statements to them.  Indeed, the appellant's requests certainly evidenced an intent to leave the detention center.  Next, for purposes of the second step of the *Faulkner* analysis, we hold the evidence was sufficient to support the trial court's finding that the appellant's involvement was established by clear and convincing evidence, i.e., more than a preponderance of the evidence and less than evidence beyond a reasonable doubt.  *Whittington v. State*, 8 Md.App. 676, 679, 262 A.2d 75 (1970).  Witnesses Muir and Timney testified to the specific incidences of the appellant's request and the details of those requests.

Finally, we believe that the trial court properly found that the evidence was necessary to the State's case.  The State's case was based primarily on circumstantial evidence, and the evidence in question paralleled informant Farris's testimony and provided required corroboration.  Likewise, the trial court did not abuse its discretion in finding the probative value of the testimony outweighed any prejudicial impact.  The statements at issue were not simply cumulative, nor can we conclude they were offered to suggest that the appellant was a "bad person."  Further, to guard against any prejudicial impact, the trial judge propounded a cautionary instruction at the close of the case.

---

4. We note that such evidence is also evidence of the appellant's preparation as well as a common scheme and plan.

We hold that the testimony of Michael Muir and Mary Ann Timney was properly admitted.

### III.

In light of the introduction of the motive and intent evidence discussed above, the trial judge gave the following limiting instruction to the jury at the close of all of the evidence:

> You have heard evidence that David Timney solicited a weapon and hacksaw blades from Mary Ann Timney and from Michael Muir. You may consider this evidence as it relates to David Timney's motive and intent to commit the conspiracy to kidnap and escape. However, these acts do not constitute any part of the crimes charged and you may not consider them as elements of those crimes.

The appellant posits this instruction was inadequate. Specifically, he argues that the cautionary instruction should have been given immediately after the evidence was offered and then again in the final instructions.[5] The appellant argues that, as the instruction came one day and several witnesses after the evidence was offered, it was insufficient to neutralize the potential prejudicial effect of Muir's and Timney's testimony.

We hold that the appellant has not preserved this issue for our consideration. Immediately after Witness Muir testified on direct examination, the appellant requested a cautionary instruction. The trial judge responded, "I'll consider that when you prepare it and present it." The appellant continued his cross-examination of Muir. No instruction was presented to the court at that time, nor was a recess requested to afford the appellant the opportunity to prepare one. Following Mary Ann Timney's testimony, the

---

5. Md.Rule 4–325(a) states:
   **When Given.**—The court shall give instructions to the jury at the conclusion of all the evidence and before closing arguments and may supplement them at a later time when appropriate. In its discretion the court may also give opening and interim instructions.

appellant again requested a limiting instruction and the trial judge again stated: "I will grant—I will consider your limiting instructions when it's presented and I will deny the motion to strike." Again, no such limiting instruction was presented to the court. Further, the appellant failed to object to the trial court's final instructions when given and presented no request for an additional instruction.

It is apparent that the appellant waived his right to object to the absence of an immediate instruction.

## IV.

The appellant next contends that the evidence at trial was insufficient to sustain his conviction of conspiracy to escape. He argues particularly that the evidence does not establish "a meeting of the minds reflecting a unity of purpose and design." *Townes v. State*, 314 Md. 71, 75, 548 A.2d 832 (1988). While the appellant concedes that he and others may have discussed various routes to end their incarceration, he argues that no final course of action was ever agreed upon.

The test for evidentiary sufficiency is whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Bloodsworth v. State*, 307 Md. 164, 167, 512 A.2d 1056 (1986). In *Townes, supra,* the Court of Appeals reiterated the elements and characteristics of the crime of conspiracy previously articulated in *Mason v. State*, 302 Md. 434, 444–45, 488 A.2d 955 (1985):

A criminal conspiracy consists of the combination of two or more persons to accomplish some unlawful purpose, or to accomplish a lawful purpose by unlawful means. The essence of a criminal conspiracy is an unlawful agreement. The agreement need not be formal or spoken, provided there is a meeting of the minds reflecting a unity of purpose and design. In Maryland, the crime is

complete when the unlawful agreement is reached, and no overt act in furtherance of the agreement need be shown. *Townes*, 314 Md. at 75, 548 A.2d 832. The State is not required to show a formal agreement in order to establish the existence of a criminal conspiracy; all it must present are facts which allow the finder of fact to infer that the parties tacitly agreed to commit an unlawful act. *Rhoades v. State*, 56 Md.App. 601, 612, 468 A.2d 650 (1983); *Silbert v. State*, 12 Md.App. 516, 528, 280 A.2d 55 (1971).

■ We hold that the evidence was sufficient to sustain the appellant's conviction for conspiracy to escape, as there was evidence of an agreement between the appellant, Co-defendant Goggin, and the other conspirators to escape. Witness James Farris testified to the appellant's declaration that his friend was "going to get him out," and to his request for help in obtaining weapons and assistance outside the detention center. Farris also described the above-noted conversation with Timney, Richardson, and Sills in which the parties discussed details of the escape plan. In addition to the testimony of Farris, witness Shank testified to being asked by Goggin to relay a phone number to the appellant via an intermediary, and Goggin sought assistance from Officer Poole in obtaining a gun, car, and money in furtherance of the escape plan.

## V.

The appellant was charged in the Second Count of the indictment with conspiracy to escape, and in the Third Count with conspiracy to kidnap the State's Attorney for Washington County and his wife. The appellant moved to dismiss both conspiracy counts, arguing that as the planned kidnapping was merely a means to accomplish the escape, only one conspiracy existed. The trial judge denied the motion, stating:

> It occurs to me that the State has charged not a single crime but two separate crimes, one of which is the conspiracy to kidnap, the motive for which perhaps, probably was the means of escape, not the usual money ransom.

But it has also charged a separate conspiracy to escape, both of which are crimes. The State certainly has the right to do that alternatively and I can address this further if it is appropriate to do so at the close of the trial certainly before submission to the jury and will do so.

The appellant argues that the denial of the motion to dismiss resulted in his being tried on two counts charging the same crime and cites *Mason v. State*, 302 Md. 434, 488 A.2d 955 (1985), for support. Hence, as appellant's argument goes, his acquittal for a conspiracy to kidnap requires that his conviction for conspiracy to escape be set aside and that the State be prohibited from ever trying him again for that offense. We disagree.

■ Kidnapping and escape are two distinct offenses; therefore, there was no duplicity in the charge of Counts II and III of the indictment. Based on the evidence presented to it, the jury could have and apparently did find a separate conspiracy to escape independent of the alleged conspiracy to use kidnapping as a means of effecting an escape. The holding in *Mason* is that a defendant who distributes a number of controlled dangerous substances in accord with a single unlawful agreement commits one crime of conspiracy. *Id.* at 445, 488 A.2d 955. The State cannot "fragment one conspiracy into several conspiracies on the basis of the number of controlled dangerous substances distributed." *Id.* The case *sub judice*, however, presents no such double jeopardy considerations, especially in light of the fact that the appellant was only convicted and sentenced on one of the counts in question. Accordingly, we hold that there was no error in the trial judge's denial of the appellant's motion to dismiss.

## VI.

The trial judge sentenced the appellant to ten years for his conviction of conspiracy to escape (Count II) to be served consecutively to a 35–year sentence then being served. The appellant first argues that the trial judge abused his discretion in sentencing the appellant outside the

Maryland Sentencing Guidelines, which recommended a four- to eight-year sentence. Next, the appellant argues that as his trial was removed from Washington County, it was inappropriate for the three judges of the Circuit Court for Washington County to sit as his three judge review panel.[6]

In *Rendelman v. State,* 73 Md.App. 329, 533 A.2d 1339 (1987), we reiterated the limited scope of appellate review of sentences:

> Appellate review of sentences is extremely limited in Maryland; only three grounds of review are recognized: (1) the sentence may not constitute cruel and unusual punishment or otherwise violate constitutional requirement; (2) the sentencing judge may not be motivated by ill will, prejudice or other impermissible consideration; and (3) the sentence must be within statutory limitation.

*Id.* at 334, 533 A.2d 1339.

As to the appellant's first contention, the sentencing guidelines are not mandatory. The law does not require the trial judge to apply guideline sentences or principles; "they compliment rather than replace the exercise of discretion by the trial judge." *Teasley v. State,* 298 Md. 364, 370, 470

---

**6.** In addition to the contentions cited above, the appellant contends that an ambiguity in the verdict sheet prevents him from knowing under which subsection of Art. 27, § 139 he was convicted. To elaborate, the jury marked "guilty" in response to Question 1 of the verdict sheet, which read: "Do you find the defendant David Chalmer Timney guilty or not guilty of conspiracy to effect his or Jack Richardson's escape?" The appellant argues that, because of the disjunctive phrasing of the question, he cannot know whether he was sentenced to a consecutive sentence under the mandatory language of § 139(a) or pursuant to § 139(c).

When sentencing the appellant, the trial judge stated: "The sentence of the court is that he be confined to the custody of the commissioner for a period of ten years, that sentence to run consecutively with any sentence which he is presently serving ... it's consecutive in any event, whether it's under (a) or (c); whether or not it's mandatory, it's my belief that a consecutive sentence is appropriate." We only note that the appellant's sentence is legal under both, absent some independent showing of abuse of discretion.

A.2d 337 (1984); *Hurley v. State,* 60 Md.App. 539, 563, 483 A.2d 1298 (1984).

■ The trial judge stated at sentencing, "It's my belief that a consecutive sentence is appropriate," and noted on the guidelines worksheet that "the circumstances of this event require maximum." It is clear to us that the trial judge imposed a constitutional, statutorily allowed sentence, and as there is no evidence that he relied on an impermissible consideration in imposing it, we find no error.

■ Similarly, we will not vacate the trial judge's sentence based on the appellant's second allegation of sentencing error. The three-judge panel that reviewed his sentence, by order of February 2, 1989, affirmed the trial judge's ten-year consecutive sentence. The crux of the appellant's argument is that "if it is inappropriate for a judge to preside at trial, it is equally inappropriate for that same judge to participate in any part of the case including review of sentence." [7] We will not address the merits of this argument, because it was not preserved for our consideration. The record indicates that the appellant did not request the judges of the Circuit Court for Washington County be disqualified when he applied for a three-judge panel review of his sentence; nor did he object to the make-up of the panel at any time after it was appointed on January 6, 1989.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.

---

7. The appellant's pre-trial motion for recusal of the judges of the Circuit Court for Washington County was granted by a May 11, 1988 Order of Removal to the Circuit Court for Garrett County. The basis for the motion was (a) one of the intended victims of the conspiracy was the Washington County State's Attorney; (b) Judge Daniel Moylan had already sentenced the appellant to 35 years; and (c) Judge Fred C. Wright, III heard pre-trial Motions concerning the offense for which Judge Moylan eventually sentenced the appellant.