599 A.2d 465

**Bruce Emory MURRAY**

v.

**STATE of Maryland.**

No. 1871, Sept. Term, 1990.

Court of Special Appeals of Maryland.

Dec. 24, 1991.

---

**11.** The child's mother testified that she had "never heard a cry like that before."

**628**

Nancy S. Forster, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Kreg Paul Greer, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Scott G. Patterson, State's Atty. for Talbot County, Easton, on the brief), for appellee.

Submitted before GARRITY, BLOOM and DAVIS, JJ.

GARRITY, Judge.

Bruce Emory Murray, the appellant, was convicted on September 19, 1990, by a jury in the Circuit Court for Talbot County (Horne, J., presiding) of distribution of cocaine and conspiracy to distribute cocaine. He received a sentence of fifteen years incarceration for distribution of cocaine and a consecutive five year sentence on the conspiracy conviction, the latter being suspended with a five-year term of probation imposed.

The evidence at trial consisted essentially of the identification of appellant by State Trooper Ronald Crouch, as one of two men who, during the evening of January 5, 1990, passed him a "twenty" of cocaine (a twenty dollar pebble of crack cocaine) on Locust Street in Easton. Appellant complains that Trooper Crouch's mug shot identification of him made three days after the drug transaction was unreliably

based on the name given by the informant/witness immediately after the illegal drug transaction.

We are asked to decide whether the trial court erred when it sustained the prosecution's objection to appellant's request of Trooper Crouch to reveal the informant's name, whether there was sufficient evidence upon which to convict for conspiracy to distribute cocaine, and whether the sentence was proper.

## FACTS

According to Trooper Crouch, on January 5, 1990, at 10:20 p.m., he drove an unmarked vehicle to the illuminated intersection of Locust and South Streets in Easton in response to complaints of open air drug sales taking place in that area. He was accompanied by a confidential informant. An individual, later identified by the street name of "Tootie," approached the vehicle on the driver's side and asked the undercover trooper what he was looking for. At that time the trooper stated he was looking for a "twenty." Tootie then said, "Well, let me get in."

Trooper Crouch, driving with the confidential informant next to him and Tootie to the informant's right, drove a short distance down Locust Street where Tootie summoned a person to the window. The man who approached was allegedly the appellant, Bruce Emory Murray. After a short conversation between Tootie and Murray, Murray handed Tootie a small plastic envelope containing crack cocaine. Tootie handed it to Trooper Couch who produced a twenty dollar bill. The trooper then handed the money to Tootie who gave it to Murray who was standing by the car door.

The trooper, who made a positive in-court identification of the appellant without objection, testified that Murray had stood four or five feet from the open car window for three or four minutes. At one point, Murray bent down and put his face inside the side window as Murray conversed with

Tootie, thus providing Trooper Crouch with "a very good look" at him.

After Murray completed the transaction, the trio drove a short distance and stopped to allow Tootie to exit. Shortly thereafter, the confidential informant disclosed the names of the principals to Trooper Crouch. The officer testified that, upon reviewing Murray's police files, he immediately recognized him as the person who had sold him the cocaine.

The appellant testified that he could not recall what he had been doing on the night that the drug transaction had taken place or recall an incident similar to that to which Trooper Crouch had testified. He advised the jury, however, that because he was addicted to cocaine, it would have been "impossible" for him to have sold it to another.

## DISCUSSION OF LAW

### I. CONFIDENTIAL INFORMANT

■ The only mention or discussion concerning the identity of the confidential informant took place during the cross-examination of Trooper Crouch. The transcript of record reflects:

Q. [DEFENSE COUNSEL]: And there were—when you pulled up, there were two passengers in that vehicle, yourself driving and a confidential informant; is that correct?

A. That's right.

Q. And that confidential informant's identity is what?

PROSECUTOR: Objection.

THE COURT: Sustained.

Q. And then you allege Mr. Wilson ["Tootie"] got into the front seat of the vehicle; is that correct?

A. That's right.

The rationale and thrust of *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), is that where disclosure of an informer's identity is essential to a fair determination of a cause, and thus *the right of an individ-*

*ual to prepare a defense,* the privilege of nondisclosure must give way. As observed by the Court, "[w]hether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Roviaro,* 353 U.S. at 62, 77 S.Ct. at 629, 1 L.Ed.2d at 646.

In *Brooks v. State,* 320 Md. 516, 578 A.2d 783 (1990), when it was disclosed at a pretrial hearing on a motion to compel disclosure that an informant had participated in the transaction by initiating discussion about purchasing narcotics, the Court rejected the trial court's characterization of the informant as a mere "tipster" and remanded the matter to allow a test of the disclosure motion under *Roviaro.* As observed by Chief Judge Murphy in *Brooks:*

> We noted that "[t]he cases universally recognize the exception to the nondisclosure privilege where the informer was a participant, accessory or witness to the crime." *Gulick v. State,* 252 Md. 348, 354 [249 A.2d 702] (1969). Judge Orth, in *Nutter v. State,* 8 Md.App. 635 [262 A.2d 80] (1970), clarified the disclosure requirement in regard to an informer who witnesses the unlawful transaction:
>
>> " '[W]itness' as used in *Gulick* means a material witness, in the sense that his testimony is *important* to a fair determination of the cause. It is then that his identity becomes necessary and relevant to a fair defense. Thus in this context 'material' may be said to have a meaning more restrictive than its usual meaning. So, although an eyewitness to a crime is clearly a 'material' witness as that word is ordinarily used, if he is an informer, simply observing an illegal transaction but not participating in it, the fact that he observes the transaction does not necessarily make his possible testimony so important as to compel disclosure of his identity in the face of the rationale of the nondisclosure privilege." (Emphasis in original).

The decision to compel disclosure of an informer is within the sound discretion of the trial court. *Gulick*, 252 Md. at 354 [249 A.2d 702].

*Id.*, 320 Md. at 524–25, 578 A.2d 783.

Stressing that the balancing test should be applied in all cases, regardless of the informant's characterization, the Court also emphasized, "[a]s noted in *Nutter*, the key element is not the role of the informer, but the materiality of his testimony to the determination of the accused's guilt or innocence balanced against the State's interest in protecting the identity of the informer." *Brooks*, 320 Md. at 525, 578 A.2d 783.

Although it is clear that the informant in the matter *sub judice* was not a participant in the transaction, but merely supplied the appellant's name after the completion of the buy, he was an eyewitness to the crime. There is no question that if a proper motion had been made the trial judge would have been required to apply the balancing test under *Roviaro,* and we would have been able to review its correctness. Appellant did not make such a motion; nor did he otherwise bring to the trial court's attention any contention that the identity of the informant was essential to a fair determination of the cause. Therefore, the court had no occasion to conduct or articulate any balancing analysis as provided in *Roviaro.*

The State argues that

The balancing test that must be performed by the trial court cannot be accomplished unless the trial court has been presented with evidence from both sides. As it is the State's privilege to withhold from disclosure the identity of its confidential informants, *Drouin v. State*, 222 Md. 271, 279 [160 A.2d 85] (1960), it is incumbent upon the defense to move to compel disclosure of the informant's identity. If the trial judge is to carry out "his duty to balance" a defendant's claim of misidentification against the State's interest in protecting an informer's identity as mandated by *Brooks*, then the defense must do more than

was done in the present case. Simply asking a State agent on cross-examination to reveal the identity of his confidential informant and letting the issue drop after the trial court has sustained the State's objection to that request will not enable the trial court to balance anything pursuant to *Brooks*.

As the burden is on the defendant to show that disclosure is necessary, we agree with the State. As observed by the Court in *Brooks*,

> [a defendant] must do more than merely speculate that disclosure will prove helpful.... "[W]hile a defendant who has not had an opportunity to interview a witness may face a difficult task in making a showing of materiality, the task is not an impossible one." Nevertheless, the burden is on the defendant to assert a substantial reason indicating that the identity of the informer is material to his defense or the fair determination of the case.

*Id.* 320 Md. at 528, fn. 3, 578 A.2d 783.

Having failed to make a motion to compel disclosure of the identity of the confidential informant and, consequently, having failed to develop a record, or even a proffer, upon which the trial court could base a determination as to whether the identity should be disclosed in the present case, the appellant's contention is not properly before us.

## II. CONSPIRACY

Murray argues that there was insufficient evidence to support a finding by the jury that there was a meeting of the minds between Tootie and Murray necessary to sustain the conviction of conspiracy. This argument is specious in light of testimony by Trooper Crouch that Murray passed the "twenty" of cocaine into the car after talking to Tootie and was handed back a twenty dollar bill by Tootie.

The test for evidentiary sufficiency is "whether after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'

*Bloodsworth v. State,* 307 Md. 164, 167, 512 A.2d 1056 (1986). In *Timney v. State,* 80 Md.App. 356, 563 A.2d 1121 (1989), we stated the elements of the crime of conspiracy:

A criminal conspiracy consists of the combination of two or more persons to accomplish some unlawful purpose, or to accomplish a lawful purpose by unlawful means. The essence of a criminal conspiracy is unlawful agreement. The agreement need not be formal or spoken, provided there is a meeting of the minds reflecting a unity of purpose and design. In Maryland, the crime is complete when the unlawful agreement is reached, and no overt act in furtherance of the agreement need be shown.

*Id.* at 366–67, 563 A.2d 1121 (citing *Townes v. State,* 314 Md. 71, 75, 548 A.2d 832 (1988)). The prosecution need not show a formal agreement in order to establish the existence of the criminal conspiracy. *Id.* 80 Md.App. at 367, 563 A.2d 1121. The State is simply required to present facts which would allow the finder of fact to infer that the parties tacitly agreed to commit an unlawful act.

We hold that there was substantial evidence upon which a jury could find Murray's and Tootie's conversation and acts involved a meeting of the minds to distribute crack cocaine.

## III. SENTENCING

Murray appealed his sentence on the theory that he was sentenced twice for the same illegal activity with one illegal objective. This argument is also without merit.

In *Wooten–Bey v. State,* 76 Md.App. 603, 628, 547 A.2d 1086 (1988), the appellant was convicted of conspiracy to rob and attempted robbery. On appeal, Wooten–Bey argued that under the Rule of Lenity only a single conviction for robbery was permissible and asked this court to merge his conspiracy to rob conviction into the attempted robbery conviction. In holding that the Rule of Lenity did not apply and in affirming the two sentences, we stated:

We thus have two separate criminal acts for which the Legislature has provided distinct punishments. Appellant

presents us with no case law or legislative history suggesting that the Legislature did not intend to punish both of these criminal acts, nor can it be seriously argued that an ambiguity exists when the statutes are applied in tandem. It makes sense that, because the two crimes and penalties addressed different criminal behavior, separate sentences can be imposed.

*Id.* at 629, 547 A.2d 1086.

The holding of *Wooten–Bey* is dispositive of Murray's case. Murray received the suspended consecutive five-year sentence for planning to distribute crack cocaine with Wilson. The fifteen-year sentence imposed by the trial court was for Murray's act of actually consummating that plan by distributing the crack cocaine. The trial court did not err in imposing separate sentences for the conspiracy and the distribution charge.

JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANT.