## NELSON LEROY HENDERSON *v.* STATE OF MARYLAND

[No. 97, September Term, 1971.]

*Decided November 15, 1971.*

The cause was argued before MURPHY, C. J., and ANDERSON and CARTER, JJ.

*Nelson R. Kandel* for appellant.

*James G. Klair, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *Thomas Howard, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ANDERSON, J., delivered the opinion of the Court.

Appellant, Nelson Leroy Henderson, was convicted along with Robert Hyle on February 8, 1971, of conspiracy to violate the Controlled Dangerous Substance Laws and possession of dilaudid, an opium derivative and a controlled dangerous substance. The trial was held in the Criminal Court of Baltimore, Judge Charles D. Harris presiding without a jury. The appellant was sentenced to the jurisdiction of the Department of Correctional Services for a period of three (3) years in each conviction, the terms to run concurrently. From these convictions this appeal was taken.

On appeal the appellant contends that:

    (1)  The trial court erred in admitting into evidence the hearsay statements of Eddie

Bourne and David Rutherford, two alleged co-conspirators.

(2) The evidence was insufficient to support the appellant's convictions.

## I

Appellant first challenges the admission in evidence of certain statements made by the State's chief witness, Detective Paul Kelly, Narcotic Unit, Baltimore City Police Department. The statements made were hearsay as they were extra-judicial statements offered in evidence for the truth of the matter asserted therein and were admitted over objection. The question is whether the statements were admissible as exceptions to the hearsay rule. The statements made by Detective Kelly and objected to are as follows:

"Q. What else did he [David Rutherford] say now?

"A. He told me that he was going to cop something [buy narcotics] and he asked me if I wanted anything, and he would cop for me. I said, yes, I was looking for some things, meaning narcotics, and he stated, 'Okay. I'll cop for you for approximately three dollars.' I agreed. At this time he instructed me to go across the street to Eddie Bourne's car, and at Eddie Bourne's car we had a conversation. He asked me if I had been down there, how many times, you know, to cop."

* * *

"Q. What else was said?

"A. He [Rutherford] asked me if I was going to cop with him, and I told him, yes. At this time he asked what I was doing, and I said, smack, meaning heroin. He said they were going to get dilaudid. I said, okay. At this time Eddie and David Rutherford came to the car. He called both in the car. He

[Rutherford] said, 'Okay, I got three things to get.' "

\* \* \*

"A. We left in the vehicle, and proceeded to a place on Preston near Charles. We remained there for a few minutes, and David Rutherford got out of the car and walked around the corner, and remained there for a few minutes, and came back. At this time he got back into the car, and he stated, 'The man isn't there yet. He's up the street and bagging. He said he won't be done until midnight.' "

\* \* \*

"Q. What happened next?

"A. Rutherford asked me, did I still want to cop some D [dilaudid], and I told him, yes. He said Eddie and Nelson got the D."

\* \* \*

"A. Rutherford said that they could find Mr. Henderson out on 36th Street, and we could get some D from him, either that or at the apartment."

\* \* \*

"Q. What, if anything, was said?

"A. David Rutherford went into the first floor entrance on the building, that I stated was on the northeast corner. He came out a few minutes later, and he looked up at the window, and he said, 'It's Dave.' A voice came out of the building, saying, 'Go away. Go away.' He said, 'Tell Nels it's Dave.' The voice again stated, 'Go away.' At this time he entered the building. He came back to the car, and he told me that, 'Nelson and Bobby are up there firing. They don't want to be bugged. We'll have to wait.' "

\* \* \*

"Q. What, if anything, did this Rutherford say to you before you followed the automobile?

"A. David Rutherford stated, 'Nelson's got D. Let's go down.' And Eddie turned back, and he said 'You talk too much when you're high on D.' "

We think it important at this point to note the trial court stated that it considered the hearsay testimony in passing on the guilt of the appellant only on the conspiracy charge and that the hearsay evidence was not considered on the charge of possession. The rules concerning the admissibility of such hearsay evidence where the crime of conspiracy is involved have been set forth by this Court in *Johnson v. State,* 9 Md. App. 327 at 340 and 341:

> " 'When several persons are proved to have unlawfully conspired to commit a crime, the acts and declarations of any conspirator during such conspiracy, and in furtherance thereof, are admissible as substantive evidence against any co-conspirator on trial.' *Wharton's Criminal Evidence* (12th Ed.) Vol. II, Sec. 416. The Court of Appeals in *Lawrence v. State,* 103 Md. 17, adopted this rule of evidence but qualified it by stating at 103 Md. 20, 'a foundation must first be laid, by proof, sufficient in the opinion of the judge, to establish, *prima facie,* the fact of conspiracy between the parties . . .' See also Underhill, *Criminal Evidence* (5th Ed.), Sec. 861. '[T]he gist of a conspiracy is the entering into of the illegal scheme or design, and once this occurs, the crime is complete without the doing of an overt act. *Greenwald v. State,* 221 Md. 245. The testimony of an accomplice is clearly admissible to prove a conspiracy, *Foster v. State,* 230 Md. 256, and the conspiracy may also be shown by circumstantial evidence from which an inference of common

design may be drawn . . .' *Price v. State,* 4 Md. App. 701 at 704.

'. . . When once the conspiracy or combination is established, the act or declaration of one conspirator or accomplice in the prosecution of the enterprise is considered the act or declaration of all, and therefore imputable to all. All are deemed to assent to, or command, what is said or done by any one of them in furtherance of the common object.

* * *

'The declarations may be written, oral, or both. They may be admitted to prove any point, such as the existence of the conspiracy, the course of events in its inception and operation . . . the preparation for the commission of the crime . . . , the relations of the parties, . . . and the acts done to conceal the offense. *Wharton, supra,* Sec. 416. See also Underhill, *supra,* Sec. 861.

* * *

'The theory for the admission of such evidence is that persons who conspire to commit a crime, and who do commit a crime, are as much concerned, after the crime, with their freedom from apprehension, as they were concerned, before the crime, with its commission: . . .' *Wharton, supra,* Sec. 430. See also Underhill, *supra,* Secs. 179 and 864."

In the instant case, prior to the statements made by Detective Kelly, which the appellant challenges, Kelly testified that on October 1, 1970, he was working in an undercover capacity and that he met with Bourne and Rutherford in Bourne's car at Elm and 36th Streets. The car later proceeded with Kelly, Bourne and Rutherford to an apartment at Chestnut Avenue and Keswick Road. Rutherford went in and Kelly and Bourne stayed outside. Kelly then saw Rutherford come back out of the apartment and get back into the car. Robert Hyle, a co-

defendant, and the appellant then exited the apartment, Kelly testified. Kelly then testified that he saw Bourne give the appellant an amount of U. S. currency, which Kelly said he had previously given to Rutherford for the purpose of purchasing narcotics and which Kelly had previously observed being given by Rutherford to Bourne. Bourne, Rutherford and Kelly then followed Hyle and the appellant to 3407 Chestnut Avenue and at that address all but Kelly went inside. Bourne and Rutherford soon exited and Kelly then saw Bourne give Rutherford some tinfoil packets. In the car, one of the packets was given to Kelly. The packet was later determined to contain dilaudid by a United States Customs Chemist and the tinfoil packet and chemist's report were offered into evidence as State's Exhibits Nos. 1 and 2. Kelly then testified that he had reason to believe that before the four entered the house at 3407 Chestnut Avenue they had no narcotics in their possession of any kind. This belief, Kelly said, was due to statements made previously by Rutherford and Bourne. It was only at this time that the trial court allowed Kelly to testify over objection as to the statements made by Rutherford and Bourne.

Conspiracy is a combination by two or more persons to accomplish a criminal or unlawful act, or to do a lawful act by criminal or unlawful means. *Jones v. State,* 8 Md. App. 370, 375. As Orth, J. stated for this Court in *Jones, supra,* at 377:

> "* * * [C]onspiracy is the combination resulting from the agreement, rather than the mere agreement itself. However, there must be a meeting of the minds — a unity of design and purpose — to have an agreement, but it is not necessary that a formal agreement be shown. It need not be manifested by any formal words, written or spoken. 'It is enough if the parties tacitly come to an understanding in regard to the unlawful purpose, and this may be inferred from the sufficiently significant circumstances, although evidence which merely creates suspi-

cion will not be adequate.' *Perkins, supra,* [Criminal Law (1957)], at p. 530."

Furthermore, a conspiracy may be shown by circumstantial evidence from which an inference of common design may be drawn and it is not necessary to demonstrate that the conspirators met and agreed in terms to a design and to pursue it by common means. *Seidman v. State,* 230 Md. 305, 322; *Jones v. State, supra,* at 377; *Johnson v. State,* 10 Md. App. 652, 662. We hold that there was sufficient evidence before the trial court, prior to the introduction of the challenged statements, for it to conclude that the State had shown a *prima facie* case of conspiracy to violate the Controlled Dangerous Substance Laws. A *prima facie* case of conspiracy having been presented, the testimony of Detective Kelly as to the statements of Rutherford and Bourne was admissible as substantive evidence under the co-conspirator exception to the hearsay rule.

## II

The appellant's second contention is that the evidence adduced was insufficient to support his conviction for conspiracy to violate the Controlled Dangerous Substance Laws and for possession of dilaudid, a controlled dangerous substance.

The evidence was shown in Part I of this opinion to be sufficient to support the conviction for conspiracy. The evidence showed that the appellant and the three other co-conspirators had an understanding, a common design, in regard to the illegal purpose. *Jones v. State, supra; LaFortez v. State,* 11 Md. App. 598. Therefore, the trial court was not clearly erroneous in his judgment that there was a conspiracy and that the appellant was a co-conspirator. Maryland Rule 1086. *Williams and McClelland v. State,* 5 Md. App. 450, 455.

In addition, we hold that there was sufficient evidence to convict the appellant of possession of dilaudid. The appellant testified that the property known as 3407 Chestnut Avenue was his mother's house and that he had left

his apartment and was living at that address. On cross-examination the appellant admitted using the drug dilaudid around the time of October 1, 1970, and said that he had used it with Rutherford and Bourne. Detective Kelly testified that he saw the appellant being given the money that he (Kelly) had given Rutherford for the narcotics. Kelly also testified that Rutherford and Bourne entered 3407 Chestnut Avenue with the appellant and Hyle and returned with the tinfoil packets containing the narcotics.

Possession has been defined as the act or condition of having in or taking into one's control or holding at one's disposal. When the proscribed articles are found on the person of the traverser, possession by him is clear. He may also possess them by having them in his immediate control. But there need not be actual physical possession; it is not necessary that the possession be immediate and direct. There may be constructive possession. *Williams and Williams v. State*, 7 Md. App. 5, 14. See also 91 A.L.R.2d, Anno: *Narcotic-Possession-What Constitutes*, pp. 812-831.

In the instant case the evidence of possession is circumstantial. In passing upon the guilt of the appellant on the charge of possession the trial court stated:

> "I accept the testimony of Detective Kelly, that after the second stop had been made, that Rutherford got out of the car, and came back with that small tinfoil of dilaudid. It is circumstantial. I know there is no direct evidence that Detective Kelly saw Henderson give the tinfoil to Rutherford, but what was he doing in going there and following the automobile, and having Rutherford get out, and go up to Henderson unless Henderson was to give him something? That question is left completely unanswered by the testimony of Henderson."

From the testimony of Detective Kelly and from the rational inferences to be drawn therefrom, the trial court

concluded that the appellant was in possession of the narcotics. This Court held in *Nichols v. State,* 5 Md. App. 340 at 350, that:

> "* * * Circumstantial evidence alone is sufficient to support a verdict of guilty (except for the crime of treason and, in some jurisdictions, perjury) or it may be used in conjunction with direct evidence. It may corroborate other testimony and may be used to prove any element of the crime, such as the *corpus delicti* or the criminal agency of the accused. [Footnote omitted].
>
> "The law makes no distinction between direct evidence of a fact and evidence of circumstances from which the existence of a fact may be inferred. No greater degree of certainty is required when the evidence is circumstantial than when it is direct, for in either case the trier of fact must be convinced beyond a reasonable doubt of the guilt of the accused." [Citations omitted].

The weight of the evidence and the credibility of the witnesses are for the trier of fact and there is no obligation to believe the denials of the accused. *Price v. State,* 5 Md. App. 127, 130; *Melia and Shelhorse v. State,* 5 Md. App. 354, 366. We hold that from the record there was legally sufficient evidence for the trial court to be fairly convinced beyond a reasonable doubt of the appellant's guilt on the charge of possession of dilaudid. It cannot be said from the record that the judgment of the trial court was clearly erroneous and, therefore, the appellant is not entitled to relief. Maryland Rule 1086.

*Judgments affirmed.*