572 A.2d 1101

**Henry N. EZENWA, Theophilus C. Obi and Samson O. Okoroafor**

v.

**STATE of Maryland.**

**No. 1009, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

May 2, 1990.

490

492

Bruce L. Marcus, Greenbelt (Alan H. Murrell, Public Defender and Michael R. Braudes, Asst. Public Defender, on the brief), Baltimore, for appellant, Ezenwa.

Richard B. Rosenblatt, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty., Baltimore, and Alexander Williams, Jr., State's Atty. for Prince George's County, Upper Marlboro, on the brief), for appellee.

Argued before MOYLAN, ROBERT M. BELL and CATHELL, JJ.

ROBERT M. BELL, Judge.

Henry Nnaondi Ezenwa, Theophilus Chudi Obi, and Samson Okoroafor, appellants, were convicted by a jury in the Circuit Court for Prince George's County of conspiracy to import heroin into Maryland and conspiracy to distribute heroin. Each was sentenced to concurrent fifteen year terms of imprisonment. Aggrieved, each has appealed, raising essentially identical issues: [1]

---

1. We set out, and will address, the issues in the order in which appellants Obi and Okoroafor presented them in their brief. Appellant Ezenwa did not raise the issue presented in question 4, *infra* and he addressed issue 2 in two questions, namely:

1. Did the trial court err in permitting a police officer to interpret facially innocuous conversations as drug-related in the absence of any foundation establishing that the participants were involved in the importation or sale of drugs?

2. Did the trial court err in permitting the jury to consider and render a verdict upon two separate conspiracy charges when the State served notice upon the defense that it was relying upon a single conspiracy?

3. Did the trial court err in admitting irrelevant and prejudicial evidence?

4. Did the trial court err in denying appellants' motions to suppress the fruits of the wiretaps?

5. Did the trial court err in its admission of specific objectionable conversations?

6. Did the trial court err in admitting evidence that the prosecution's expert witness had been accepted as an expert by other courts in other cases?

7. Did the trial court impermissibly restrict the defense cross-examination of a State's witness alleged to have engaged in an improper conversation with a juror?

8. Did the trial court err in denying Appellants' motion for mistrial predicated upon the injection into the case of evidence of other crimes?

## STATEMENT OF FACTS

During an investigation of illegal distribution of controlled dangerous substances in the Baltimore metropolitan area, the Maryland State Police Narcotics Division obtained information that a similar conspiracy involving a group of Nigerian nationals might be ongoing in Prince George's

---

(1) Whether the court erred in failing to dismiss the Indictment where the State advised the Appellant that there was only one conspiracy and the indictment contained two separate counts of conspiracy?

(2) Whether the court erred in sentencing the Appellant on two separate counts of conspiracy where only one crime was alleged to have existed?

County. Thus, an investigation was initiated in Prince George's County by applying for an Ex Parte Wiretap Order. The order was issued on or about December 1, 1987 and continued, with extensions almost without interruption, until February 17, 1988, when appellants were arrested. The tap was placed on the telephone line in the home of one of the appellants, but registered in the name of that appellant's relative. Because most of the conversations, 1,574 of the 2,131, were conducted in a foreign language, the Ibo dialect of the Nigerian language, the police contracted with a private citizen to translate them.

Additional facts pertinent to an issue will be set out when that issue is discussed.

1

Appellants contend that the trial court erred in allowing a police officer to interpret facially innocuous telephone conversations translated from a foreign language as drug-related. There was, they maintain, no factual basis for that interpretation. This contention is based upon a three-tiered analysis. First, appellants assert that the officer assumed that the conversants were speaking in an amorphous code, rather than literally. From that assumption, they continue, he interpreted words such as "things" and "pencils" as code references to drugs. Finally, they observe that, although never mentioned during the conversations, the officer concluded that the specific drug under discussion was heroin. Because none of these assumptions was supported by a factual basis and, indeed, the later ones are premised only upon the earlier, appellants argue that the court erred in admitting the opinion.[2] Appellants rely on *Bricker v. State,* 80 Md.App. 532, 565 A.2d 340 (1989).

---

**2.** Appellant Ezenwa bases his attack on the officer's opinion evidence primarily on the unreliability of the Nigerian interpreter. He is quite concerned about the interpreter's lack of expertise in narcotics investigations, the drug culture, etc. He maintains that the interpreter's opinion of the significance of the conversations was not founded on personal knowledge. Furthermore appellant Ezenwa asserts that the

In *Bricker,* this Court addressed a very narrow issue, whether an unlicensed psychologist is qualified to testify that an accused is mentally retarded and the causal relationship between that mental retardation and the crime charged. 80 Md.App. at 540, 565 A.2d 340. To resolve that issue, we addressed the general admissibility of expert testimony, indicating that, as an initial matter, a trial judge had to determine, as a matter of law, 80 Md.App. at 547, 565 A.2d 340, "whether the jury will receive appreciable help from the expert testimony in resolving issues presented in the case." 80 Md.App. at 539, 565 A.2d 340, quoting *Simmons v. State,* 313 Md. 33, 41, 542 A.2d 1258 (1988). Of course, "the proposed expert testimony must be competent, that is, the expert's conclusion must be based upon a legally sufficient factual foundation." 80 Md.App. at 545, 565 A.2d 340, quoting *Simmons,* 313 Md. at 41–42, 542 A.2d 1258.

The admissibility of expert testimony was also at issue in *Bohnert v. State,* 312 Md. 266, 539 A.2d 657 (1988). The Court of Appeals there stated the criteria for its admission as follows:

An expert opinion derives its probative force from the facts on which it is predicated, and these must be legally sufficient to sustain the opinion of the expert. The premises of fact must disclose that the expert is sufficiently familiar with the subject matter under investigation to elevate his opinion above the realm of conjecture and speculation, for no matter how highly qualified the expert may be in his field, his opinion has no probative force unless a sufficient factual basis to support a rational conclusion is shown. The opinion of an expert, therefore, must be based on facts, proved or assumed, sufficient to form a basis for an opinion, and cannot be invoked to supply the substantial facts necessary to support such conclusion. (Citations omitted)

---

interpreter failed to remain neutral, instead becoming an advocate on the side of the State.

312 Md. at 274–75, 539 A.2d 657 (quoting *State Department of Health v. Walker*, 238 Md. 512, 520, 209 A.2d 555 (1965).

In the case *sub judice*, the conversations conducted in the Nigerian language were recorded in full. Shortly after their recording, the police would play the tapes for the interpreter. Consistent with his instructions, the interpreter was to listen to only so much of a conversation as to determine whether it was privileged or irrelevant to the investigation. When he determined that the calls were relevant, the interpreter wrote a non verbatim summary of the conversation and gave it to the police. After the wiretap was concluded, the interpreter was given duplicates of the tapes containing the relevant conversations. He then made a verbatim transcript of those calls.[3] Using these transcripts, the police officer testified that in his "expert" opinion, the conversations were drug related.

■ The determination whether an expert opinion is admissible is a matter entrusted to the sound discretion of the trial court, the exercise of which will be reversed only if it is found to have been an error of law, an evidentiary error, or a clear abuse of discretion. *Bricker*, 80 Md.App. at 547, 565 A.2d 340. We discern no abuse of discretion in this case. See *Yeagy v. State*, 63 Md.App. 1, 22–23, 491 A.2d 1199 (1985).

■ Review of the decision to admit expert testimony may not be undertaken in a vacuum; one must look at the totality of the circumstances to determine whether that decision was a proper exercise of discretion. In this case, the expertise of the police officer in narcotics investigations is not challenged. And while the translator's neutrality is challenged, there is no real challenge to his competence to

---

**3.** Appellant Ezenwa's argument directed at the translator refers to the summaries, rather than the verbatim transcriptions. It cannot be doubted that the verbatim transcription reflects that the word that the State maintains is the Ibo equivalent of heroin is "stuff", for it is that word which appears in the verbatim transcription. In the summaries, however, the translator apparently substituted the word "heroin", for the Ibo word "stuff".

translate the Nigerian Ibo dialect. Moreover, it was as a result of a narcotics investigation begun in the Baltimore metropolitan area that the police began to focus upon appellants and their alleged drug-related activities in Prince George's County. That heroin was seized, albeit in another State, following one of the intercepted conversations in which one of appellants was involved lends support to the proposition that appellants may have been involved in a conspiracy to import and distribute heroin. Considered in their totality, then, the circumstances do not indicate that the court abused its discretion in permitting the police officer, as an expert, to interpret these conversations.

### 2

Each appellant was charged in separate counts of the indictment filed against him with two distinct conspiracies: (1) to import heroin and (2) to distribute heroin. Maintaining that there was but one conspiracy, appellants filed, *inter alia*, a motion to dismiss both counts, *see* Maryland Rule 4–252, and a Bill of Particulars.[4] In response to the Bill of Particulars, and, indeed, throughout the proceedings, the State conceded that a single agreement underlay both conspiracy counts. It stated, however, that that agreement had two distinct objectives; hence, it maintained that, for that reason, the conspiracy was properly charged in two counts. In the State's view, both counts had to be submitted to the jury and, in the event that the jury found appellants guilty of both, their remedy lay in their being sentenced on only one.[5]

---

4. Appellant Ezenwa also filed a motion for severance, contending that the evidence of the second conspiracy would be inadmissible in the trial of the first.

5. The concession that there was but a single conspiracy is consistent with the discussion of conspiracy set out in *Mason v. State*, 302 Md. 434, 445, 488 A.2d 955 (1985):

> Ordinarily, a single agreement to engage in criminal activity does not become several conspiracies because it has as its purpose the commission of several offenses. Therefore, under Maryland com-

Accepting the State's position, the court submitted both counts to the jury. The jury did return a guilty verdict on each count. Notwithstanding the State's position that it was only appropriate to punish appellants for one conspiracy, the court imposed separate, but concurrent, 15 year sentences for each.

Appellants allege that the indictments are defective, *albeit* for somewhat different reasons. In addition, appellants Obi and Okoroafor allege that the indictments failed to place them on proper notice of the allegations upon which the State was proceeding. Each appellant suggests that he was prejudiced by the failure to dismiss one of the two counts of conspiracy and, therefore, that his convictions must be reversed.

Focusing on the State's concession that there was only one conspiracy, appellant Ezenwa relies upon the doctrine of duplicity.[6] He argues:

> In the case at the bar the State charged two crimes but told the Defendant that he could only be convicted of one. The net effect of this was to afford the State the opportunity to adduce evidence in support of an allegation for which the Defendant presumably could not be convicted. The State by broadening the scope of the allegation was permitted to present evidence which went beyond the scope of the allegation.

By analogy, therefore, appellant relies on *Timney v. State*, 80 Md.App. 356, 563 A.2d 1121 (1989). In that case, the Court rejected the argument that a charging document which charged two separate conspiracies, in two separate counts, was duplicitous. We opined that "the jury could have and apparently did find a separate conspiracy to

---

mon law, irrespective of the number of criminal goals envisioned by a single criminal agreement, the conspirator is usually subject to but one conspiracy prosecution.

**6.** A charging document is duplicitous if it charges more than one offense in a single count. *See State v. Hunt*, 49 Md.App. 355, 357, 432 A.2d 479 (1981); *Ayre v. State*, 21 Md.App. 61, 64–65, 318 A.2d 828 (1974).

escape independent of the alleged conspiracy to use kidnap-ping as a means of effecting an escape." *Id.,* 80 Md.App. at 368, 563 A.2d 1121. The Court in *Timney,* therefore, point-ed out that the accused there had not been convicted and sentenced on two counts. Using this as the distinguishing feature, appellant argues that, because the State conceded that there was but one conspiracy and yet two counts were submitted to the jury, resulting in his conviction and sen-tencing for both, the opposite result should be reached in the case *sub judice.*

Appellants Obi and Okoroafor perceive the defect to be multiplicity.[7] They, too, rely upon the State's concession that there was but one conspiracy to support their argu-ment that they were prejudiced. And the prejudice they allege is that the criminal allegations against them were doubled in the eyes of the jury and, echoing appellant Ezenwa, that they were never placed on notice as to the precise charges against them. Like Ezenwa, appellants Obi and Okoroafor seek reversal of their convictions or, alterna-tively, reversal of one conviction and remand for resentenc-ing on the other.

While reiterating its concession, the State maintains that the court properly submitted both conspiracy counts to the jury for its consideration. It insists that, because each count contained a different element, *i.e.,* the different object of the conspiracy, they are not the same offense. Further-more, it continues, relying upon *United States v. Maryland State Licensed Beverage Association,* 240 F.2d 420, 421 (4th Cir.1957), "a single conspiracy may be charged as a crime in several counts to meet different interpretations that might be placed upon the evidence by the jury." In *Maryland State Licensed Beverage Association,* the Court stated:

[*Braverman v. United States,* 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942) ] holds merely that there may not be more

---

7. "Multiplicity is the charging of the same offense in more than one count." *Brown v. State,* 311 Md. 426, 432 n. 5, 535 A.2d 485 (1988).

than one punishment for a single conspiracy, not that a single conspiracy may not be charged as a crime in several counts to meet different interpretations that might be placed upon the evidence by the jury. Upon the government's evidence, which has not yet been produced, the jury might conceivably conclude that the accused were guilty of conspiracy to restrain trade by fixing prices but not of conspiracy to monopolize, or they might conclude that they were guilty of conspiracy to monopolize but not to fix prices or they might conclude that they were guilty of conspiracy to do both. If the evidence showed that there was only one conspiracy, the judge would impose only one punishment; but this is no reason for requiring dismissal of one of the counts in the early stages of the case; and parties should not be allowed thus to try their case in advance and by piecemeal.

*See also* 16 Am.Jur.2d p. 226–27.

■■■ The issue in this case is multiplicity rather than duplicity. If two counts charging conspiracy are the same, the defect in the indictment is that it contains multiplicitous counts. *Brown, supra.* Such a defect is a pleading defect and, consequently, not fatal to the indictment. *See Brown,* 311 Md. at 432, n. 5, 535 A.2d 485. Since, however, appellants were convicted of, and sentenced for, each of the two counts, they were inappropriately punished. Hence, as the State concedes, one of the conspiracy sentences must be vacated.

Appellants' argument that by charging two separate conspiracies the State "doubled the criminal allegations brought against the defendants, effectively causing the same harm as would be caused by permitting the jurors to consider a 'dead count' or charge which had already been dismissed" is without merit. Concededly, that is one of the criticisms of multiplicitous charging documents. *See* C. Wright, *Federal Practice and Procedure: Criminal* 2d § 142 (1982 Supp.). The circumstances of this case do not demonstrate, however, that that was the effect in the case *sub judice.*

Appellants' argument that they were never properly put on notice of the precise charges they were facing also lacks merit. Throughout these proceedings, the State candidly acknowledged that there was but one agreement but that there were two objects, represented by the two counts in the indictment, of the conspiracy. Consequently, it is clear, that appellants were, at all times on notice that the State alleged that they conspired *both* to import heroin into the State of Maryland and to distribute that heroin.

■ Turning to the sentencing issue, we must determine which of the two counts should be vacated. Ordinarily this would not be a problem; however, here the two counts carry different penalties.

Pursuant to Maryland Code Ann. Art. 27, § 38,[8] punishment for conspiracy shall not exceed the maximum punishment provided for the substantive offense which was the object of the conspiracy. Appellants were charged with conspiracy to import heroin, *see* Maryland Code Ann. Art. 27, § 286A, and with conspiracy to distribute heroin, *see* Maryland Code Ann. Art. 27, § 286. The maximum penalty for the former is 25 years imprisonment, while the maximum for the latter is 20 years imprisonment. The question thus becomes, which of the two conspiracy counts should be vacated?

*State v. Jenkins*, 307 Md. 501, 515 A.2d 465 (1986) is instructive on this issue. There, the defendant was charged with assault with intent to murder and assault with intent to maim. He was convicted of both. The court imposed separate, but concurrent, sentences and appellant appealed. Among the grounds for appeal was his contention that he should not have received separate sentences for both assault with intent to murder and assault with intent to maim. The Court of Appeals agreed, concluding that, "where there

---

**8.** Article 27, § 38 provides:
   The punishment of every person convicted of the crime of conspiracy shall not exceed the maximum punishment provided for the offense he or she conspired to commit.

is merger by legislative intent, the offense carrying the lesser maximum penalty merges into the offense carrying the greater penalty." 307 Md. at 521, 515 A.2d 465. The Court reasoned that, although some aggravated assaults do not merge when the required evidence test is applied, *see Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932); *Newton v. State,* 280 Md. 260, 266–68, 373 A.2d 262 (1977), aggravated assaults arising out of the same criminal incident nevertheless are not entirely separate crimes for purposes of conviction and sentence and, therefore, generally should merge. *Id.* In support of this rationale the Court referred to *Manigault v. State,* 61 Md.App. 271, 285 n. 2, 486 A.2d 240 (1985). There, this Court said:

Indeed, an assault with intent to rob and an assault with intent to murder arising out of the same attack are not separate crimes at all, but rather separate modes of aggravating a common crime. A defendant who has assaulted his victim with the concomitant specific intents to rape her, to rob her, and to kill her, has committed not three crimes, but one. That one has simply been aggravated upward to the felony plateau in three different ways. An uncritical application of the *Blockburger* test, simply comparing elements, might make it appear that assault with intent to rob, assault with intent to murder, and assault with intent to rape are all separate crimes because each possesses a distinct element. It is not a proper occasion to apply the *Blockburger* test, however, because these are but various forms of aggravating a common undergirding offense. By the same token an uncritical application of the *Blockburger* test would indicate that premeditated murder and felony-murder are separate crimes, but we know that they are but alternative modes of aggravating a single crime.

A murder aggravated up to the first degree level two separate ways does not become two murders. Neither does an assault aggravated up to the felonious level in two separate ways become two assaults.

It might facilitate our ability to conceptualize the relationship if we thought of common law assault as "assault in the second degree" and of the various aggravated assaults as forms of "assault in the first degree."

It is clear from the foregoing that one count in an indictment charging conspiracy to import heroin and another charging conspiracy to distribute heroin are not necessarily two separate conspiracies; they may very well be alternative modes of committing the single crime of conspiracy. In such circumstance, the application of the required evidence test would indicate that the offenses are not the same, each having an element different than the other. Such is the case here. Although charged separately and in proper circumstances, they may be separate crimes, nevertheless, they ought to merge: the State concedes that there is but one conspiracy with two objects. Accordingly only one penalty should be assessed. That penalty should be determined by reference to the substantive offense having the greater maximum penalty. *Jenkins, supra.*

Ordinarily we would remand the case to the trial court for resentencing; however, under the circumstances, that is not necessary. As we have seen, the court imposed concurrent 15 year sentences. Since the maximum penalty was not imposed for either offense and, indeed, the same penalty was assessed for both, we may vacate one of the convictions and allow the other to stand. Consistent with our view that conspiracy to distribute merges into conspiracy to import, we will vacate the former conviction.

### 3

Each appellant challenges the propriety of the court's ruling admitting into evidence heroin seized in New York. Each of them argues that the State failed to prove that the heroin was related to the conspiracies with which they were charged or that appellant Okoroafor, who was in the house prior to the seizure of the drugs, knew that the drugs were in the house. Thus, they conclude, the evidence

was irrelevant and, because it was also prejudicial, reversal of the convictions is mandated.

The State responds that appellants read the transcript of the proceedings too narrowly. In support of its position, the State points to a proffer made by the prosecutor as to why the admission of the seized heroin was relevant in this case:

> Look at wiretap 3 where Daniel Immanuel and Sampson are talking. He says do you know how much they buy that thing and Sampson says what. Immanuel says the black one. I would note for the Court's attention that the heroin that was seized is at least wrapped in some black thread. Sampson said if it's tested, then you can determine how much it will sell for. Immanuel, don't you know how much it is˙ selling for. Then they go on. Sampson, at least if we test it we know how much it will sell for, and it's several conversations after that in which Sampson talks about going up and getting a sample or testing it and I think Sergeant Rineker is going to testify, I would allege at this point that he is going to testify that they're referring to getting a sample of heroin.

The State also noted that one of the appellants took a train to New York and entered the residence at issue prior to the seizure of the heroin. The State maintains, therefore, that the evidence not only is relevant to the conspiracies at issue here but that it was also sufficiently tied to appellants. We agree.

The cases relied upon by appellants to establish that the heroin seized in New York was not sufficiently linked to them, *see Livingston v. State,* 317 Md. 408, 564 A.2d 414 (1989); *Dawkins v. State,* 313 Md. 638, 547 A.2d 1041 (1988); *State v. Leach,* 296 Md. 591, 463 A.2d 872 (1983); and *Garrison v. State,* 272 Md. 123, 321 A.2d 767 (1974), are inapposite. Each involves the situation in which a defendant was charged with, and convicted of, possession of a controlled dangerous substance. In such cases, it is, of course, necessary to establish at least constructive possession of the CDS, which, in turn, requires knowledge suffi-

cient to support the conviction. In the case *sub judice*, the charge is conspiracy; consequently, the proof of possession, constructive or otherwise, is not prerequisite.

Appellants Obi and Okoroafor also maintain that the court erred in admitting evidence of collateral offenses for which appellants were not on trial. Specifically, they complain about the admission of a conversation "from which the jury could infer that appellants had conspired to acquire and distribute cocaine," when appellants were only on trial for conspiracy to import and distribute heroin. Moreover, they suggest that the court erred in admitting evidence of a separate narcotics related conspiracy with a woman named Vicky.

Concerning the cocaine conversation, the record reflects that only counsel for Ezenwa objected to it. Since Ezenwa is not raising the issue on appeal and appellants Obi and Okoroafor did not raise it below, the issue is not before us and we will not consider it.

Appellant Obi did object to the admission of the telephone call involving "Vicky". The basis of the objection was that "it was a completely separate transaction." The court disagreed and ruled that it was admissible to show the scope of the conspiracies with which appellants are charged. We have reviewed the record and determined that that ruling is not erroneous. *See* Maryland Rule 8–131(c). That appellant Obi contends that it was a separate conspiracy, of course, does not make it so.

### 4

The next focus of appellants' challenge is the integrity of the wiretap. The issues they raise in that regard relate to whether the State sufficiently minimized the interception and recording of their private conversations and whether it inappropriately, unnecessarily, and illegally disclosed the fruits of the wiretap. The remedy they seek for

the perceived violations is suppression of the fruits of the wiretap.[9]

## A. MINIMIZATION

Appellants' contentions concerning the State's failure to minimize the intrusiveness of the wiretap focus primarily upon the disparity between the number of calls recorded and the number of calls introduced into evidence. In the words of appellants Obi and Okoroafor, "This is a case where in large measure, numbers tell the story. The police recorded over 2,000 conversations, and introduced into evidence fewer than 60." They also question the propriety of the police reporting in the early progress reports of all foreign language calls as "pertinent" to the investigation when, in fact, it was not known that that was so. In appellants' view, this created the false impression that "far more minimizing was going on than was actually the case, and that continuation of the tap was more justified than was in fact true." [10]

---

**9.** Appellant Ezenwa raises two additional issues, namely, whether there was sufficient probable cause to justify the wiretap order and whether a wiretap order was the least intrusive means of proceeding. We hold that these issues are not properly before us. After having heard the evidence and arguments on the motion to suppress, but before issuing his ruling, the motions judge stated:

First of all, there were a number of issues that were raised preliminarily that I assume are abandoned, not being raised at the end, and I think wisely so, so I don't have to deal with them. Things like exhaustion of other remedies, no probable cause. The probable cause in this case is just overwhelming. The need for the wiretap again as distinguished from other investigative techniques, the naming of all persons that may be involved, et cetera, again don't appear to be issues at this stage, certainly aren't put forward as issues, and I think again quite wisely.

Appellant did not disabuse the trial judge of his belief that probable cause and the need for the wiretap were not issues in the case. His failure to do so resulted in a waiver of the issues.

**10.** Appellants Obi and Okoroafor questioned the qualifications of the Nigerian interpreter to distinguish between pertinent and nonpertinent calls. As a result of his lack of competence, they maintain that there was wholesale interception and recordation of totally innocent conversations. Although stated as a separate proposition, it is clear,

Appellant Ezenwa makes the additional claim that the police failed accurately to report the wiretap's progress to the monitoring judge. He chiefly focuses upon the fact that the police reported that heroin was the subject of the intercepted conversations even though, in point of fact, the word heroin was never used or translated by the Nigerian translator, during the course of the wiretap.

■ Maryland Courts & Jud.Proc.Code Ann. § 10–408(e)(3) and (4) provides:

(e) *Extensions.*—

\* \* \* \* \* \*

(3) Every order and extension thereof shall contain a provision that the authorization to intercept shall be executed as soon as practicable, shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this subtitle, and must terminate upon attainment of the authorized objective, or in any event in 30 days.

(4) In the event the intercepted communication is in a code or foreign language, and an expert in that foreign language or code is not reasonably available during the interception period, minimization may be accomplished as soon as practicable after the interception. An interception under this subtitle may be conducted in whole or in part, by federal, State, or local government personnel, or by an individual operating under a contract with the State or a political subdivision of the State, acting under the supervision of an investigative or law enforcement officer authorized to conduct the interception.

The minimization requirement exists "to prevent unnecessary intrusion into the privacy of the surveillance target...." *Poore v. State,* 39 Md.App. 44, 64, 384 A.2d 103, *cert. denied,* 282 Md. 737 (1978). *See Spease & Ross v. State,* 275 Md. 88, 99, 338 A.2d 284 (1975). Whether the

---

as will be seen later, that this complaint really is related to the appropriateness of the recordation of all foreign language calls.

minimization requirement has been met is determined by reference to "the overall reasonableness of the totality of the conduct of the monitoring agents in light of the purpose of the wiretap and the information available to the agents at the time of the interception." *Spease & Ross*, 275 Md. at 99, 338 A.2d 284. This determination is to be made in light of a number of factors, among which are the following:

(1) the nature and scope of the crime being investigated; (2) the sophistication of those under suspicion and their efforts to avoid surveillance through such devices as coded conversations; (3) the location and operation of the subject telephone; (4) government expectation of the contents of the call; (5) the extent of judicial supervision; (6) the duration of the wiretap; (7) the purpose of the wiretap; (8) the length of the calls monitored; (9) the existence of a pattern of pertinent calls, which the monitoring agents could discern so as to eliminate the interception of nonpertinent calls; (10) the absence of monitoring of privileged conversations.

*Id.* at 100, 338 A.2d 284, It must, of course, be made on a case-by-case basis. The State bears the burden of making a *prima facie* showing that it has complied with the minimization requirements, *Poore v. State*, 39 Md.App. at 71, 384 A.2d 103; *Pearson v. State*, 53 Md.App. 217, 221–22, 452 A.2d 1252 (1982), but, once it has done so, the burden shifts to the defendant "to show an alternative procedure that would have better minimized noncriminal conversations while still permitting the State to achieve its legitimate objective." *Poore*, 39 Md.App. at 71, 384 A.2d 103; *Pearson*, 53 Md.App. at 221, 452 A.2d 1252.

After considering the factors set out above, the motions judge determined that the State had demonstrated that its efforts at minimization were reasonable. Like the motions judge, we are satisfied that numbers alone do not answer the issue. Indeed, we think the motions judge was correct in his conclusion. In that regard it is important to note that appellant at no time sought to establish or show an alternative procedure for minimization. Not having

made the effort or the showing, we hold that suppression of the evidence was not required.

Appellants' argument concerning the recording and reporting of all of the foreign language calls is meritless. The statute, *See* § 10–408(e)(4), permits the recording of foreign language calls in their entirety. Minimization is accomplished at a later time in those cases when an interpreter or translator becomes available. That was done in this case. Since there is no suggestion that the delay between recording and subjecting the foreign language calls to minimization was inordinate, the police complied with the law.

■ The motions judge considered, and ruled upon, appellant Ezenwa's contention that accurate progress reports were not provided. He stated, in that regard:

Now, as to the progress report; well, it was pointed out that although in the officer's summary and what he called his case update, Sergeant Rineker used the word heroin and used the word ounces and it was pointed out that those words do not appear anywhere in the literal translation. I think that is very, very clear in context that where the literal translation used the word stuff, it is reasonable to assume, and Sergeant Rineker correctly assumed, that stuff was heroin, especially in—it's clear that there is talk about good stuff, talk about the stuff being better than last time, the ability—inability to test the stuff in Nigeria. There was even talk about cutting the stuff and also with regard to ounces, while the word ounces was not used, when you compare the money amounts for the quantity, for the number, it is reasonable to assume that ounces were referred to.

I believe Sergeant Rineker when he said that his progress reports were fair and reasonable summaries made in good faith and that in addition to them there was further dialogue with Judge Johnson, so I think again the progress reports were fair, they were made in good faith.

They were certainly adequate to justify the continuous interception.

With that ruling, we agree.

## DISSEMINATION

■■■ During the course of the wiretap, the police made duplicate tapes which they provided to the translator so that he could make verbatim transcriptions. The translator took these tapes home and worked on them there, without supervision by the police.

Appellants argue that by providing the tapes to the translator, who was not a law enforcement officer, and allowing him to work without supervision, the police violated Maryland Courts & Jud.Proc.Code Ann. § 10–407. As a result, they maintain, suppression of the fruits of the wiretap is required.

Section 10–407(a) provides:

(a) *Disclosure by Investigative or law enforcement officer.*—Any investigative or law enforcement officer who, by any means authorized by this subtitle, has obtained knowledge of the contents of any wire, oral, or electronic communication, or evidence derived therefrom, may disclose the contents to another investigative or law enforcement officer of any state, or any political subdivision of the state, the United States, or any territory, protectorate, or possession, of the United States, including the District of Columbia, to the extent that the disclosure is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure.

This section is applicable only to intercepted conversations, Hence, all it affects is a "post intercept event." Therefore, violation of the section will be cause for suppression of evidence only if actual prejudice to the defendant has been shown.

Though disturbed by the disclosure, the motions judge found that suppression was not appropriate under the circumstances. He noted that the translator had been

brought before the monitoring judge and given an oath fully and accurately to translate the conversations, and not to disclose the contents of the wiretap. He concluded that, under these circumstances, appellants were not prejudiced. We agree. *See Poore*, 39 Md.App. at 53–54, 384 A.2d 103; *see also Baldwin v. State*, 45 Md.App. 378, 393, 413 A.2d 246 (1980), *aff'd*, 289 Md. 635, 426 A.2d 916, *cert. denied*, 454 U.S. 852, 102 S.Ct. 295, 70 L.Ed.2d 144 (1981).

## 5

■ Appellant Ezenwa argues that the trial court erred by admitting into evidence telephone conversations to which he was a party, without first having required the State to prove *aliunde* that a conspiracy existed between them.[11]

Maryland law recognizes a common law hearsay exception pursuant to which the out-of-court statement of a co-conspirator is admissible as substantive evidence against the other co-conspirators so long it was made during the conspiracy and in furtherance of it. McLain, *Maryland Practice*, § 801(5).1, p. 330. The general rule is that such statements are admissible only after a prima facie showing that the conspiracy exists and the declarant and his co-conspirators are participants in it. *Id.*, p. 331. "[W]hen the State seeks to use statements against a co-conspirator made by another co-conspirator to a third party, it must first demonstrate, through evidence *aliunde*, the existence of a conspiracy, but the testimony of one conspirator is admissible against a co-conspirator without the necessity of establishing through an independent source the existence of the conspiracy." *Mason, Taylor & Taylor v. State*, 18 Md.App. 130, 136–37, 305 A.2d 492, *cert. denied*, 269 Md. 763, 767 (1973). The former scenario is applicable here.

---

**11.** Appellants Obi and Okoroafor contend that they were denied their right to confront the uncharged participants in the taped conversations. We find no merit in this contention. *See, Bourjaily v. United States*, 483 U.S. 171, 181–183, 107 S.Ct. 2775, 2787–88, 97 L.Ed.2d 144 (1987).

In the case *sub judice,* the statements were introduced into evidence through the testimony of the police officer and the translator. Before they were admitted, however, transcripts of each intercepted conversation the State intended to use was provided to the trial court. Included among the transcripts were conversations in which each of the appellants was a party. Thus, the challenged statements were admitted into evidence only after the court had reviewed all the conversations. This procedure is consistent with the judge's responsibility to determine, preliminarily, whether a conspiracy had been established by a preponderance of the evidence. *See Henderson v. State,* 13 Md.App. 384, 388, 283 A.2d 418 (1971), *cert. denied,* 264 Md. 748 (1972), quoting, *Johnson v. State,* 9 Md.App. 327, 340–341, 264 A.2d 280 (1970).[12]

The State argues, based on the above, that the court determined the existence of a conspiracy prior to admitting the statements. And, notwithstanding that proof *aliunde* of the conspiracy was not placed into evidence prior to a particular conversation being received, the foundation for admission of the statement was nevertheless adequate. In its view, where an appellant was a party to a conversation, the statements of that appellant constituted an "admission" and, was, itself, "the proof *aliunde* of the conspiracy that permitted the conversations of the co-conspirators to be admitted." We find this argument to be persuasive.

The Court of Appeals has made clear that "it is not necessary that a conspiracy be conclusively established *before* the declarations are admissible. Flexibility in the order of proof is allowed." (Citations omitted, emphasis in original) *Grandison v. State,* 305 Md. 685, 733, 506 A.2d 580, *cert. denied,* 479 U.S. 873, 107 S.Ct. 38, 93 L.Ed.2d 174, *reh'g denied,* 479 U.S. 1001, 107 S.Ct. 611, 93 L.Ed.2d 609 (1986).

---

**12.** We believe our analysis is consistent with that articulated in *Bourjaily v. United States,* 483 U.S. at 180–181, 107 S.Ct. at 2786, upon which the State relied at trial.

■ Concerning the second part of appellants' argument—that the State failed to prove co-conspiratorship with reference to some of the parties to the conversations—the State contends that appellants inappropriately rely on the co-conspirator exception to the hearsay rule. In fact, it says, those third party statements do not come into evidence for the truth of the matter asserted, rather they are relevant and, therefore, admissible, only insofar as they provide a predicate for assessing the appellants's reaction and the meaning of appellants's statements. For this proposition, the State relies upon *Ali v. State*, 314 Md. 295, 304, 550 A.2d 925 (1988). We agree.

■ The final contention made by appellants is that some of the conversations contained matter, such as references to sex and gambling, that was irrelevant. They maintain that those conversations should have been excluded. We may assume that the irrelevant portions of the conversations should have been excluded and that it was error for the court not to have done so. Nevertheless, having reviewed the calls referred to, we think the error was harmless. *See Dorsey v. State*, 276 Md. 638, 659, 350 A.2d 665 (1976).

### 6

■ During the examination of the qualifications of the Nigerian translator, the following occurred:

Q. Now, have you had occasion to testify as an expert translator in any other court?

MR. MARCUS: [Counsel for Ezenwa]: Objection.

A. Yes.

THE COURT: Overruled. Go ahead.

Q. What court or courts were those?

A. That was in Baltimore.

Q. Baltimore City?

A. Yes.

Appellants Obi and Okoroafor both argue that the trial court erred in admitting testimony that the translator had

been accepted as an expert by other courts in other cases. As the colloquy set out above demonstrates, however, the only objection made to that testimony was made by counsel for appellant Ezenwa. Appellant Ezenwa, the record further reflects, did not raise this issue on appeal. Appellants having failed to object below, may not do so now. *See Osburn v. State,* 301 Md. 250, 253, 482 A.2d 905 (1984).

## 7 & 8

Appellants argue that the trial court erred in refusing to grant a mistrial in connection with two incidents which occurred during trial.[13] We, however, perceive no abuse of discretion.

The first incident to which appellants refer relates to the actions of a State Trooper. After he had testified for the State,[14] the trooper approached and began to talk with a juror. This occurred during a recess in the proceedings. When this fact was brought to the court's attention, it conducted an investigation, which included an informal inquiry of the trooper and the affected juror. While each acknowledged having a conversation, each adamantly denied that it involved the case being tried. In addition, the trooper maintained that he did not know he was approaching a juror.

Later, the court conducted a more formal inquiry of the remainder of the jury to assess the extent to which the incident had any effect upon any of them. The court also recalled the trooper.

---

**13.** Appellants Obi and Okoroafor address the first in terms of the restriction of their right to cross-examine the State's witness. The prejudice flowing from that restriction of cross-examination, however, in the context of this case, could only have been remedied by granting a motion for mistrial. Hence, we treat the argument by Obi and Okoroafor as challenging the trial judge's exercise of discretion to deny the mistrial.

**14.** His testimony related only to the execution of a search and seizure warrant and did not generate any cross-examination by either appellant.

Appellants wished to inquire whether the trooper had knowingly spoken with a sitting juror. One of them, appellant Okoroafor, wished to do so while sitting in the jury box where the female juror had been sitting. The court denied both requests.

At the conclusion of the hearing, the court ruled:

After hearing all the arguments of counsel and listening to the testimony, short testimony of all the jurors, including the alternates, and the testimony of Trooper Ridgell, I am of the opinion that the defense has shown no prejudice here that would in any way impair the ability of the jurors to come back with a fair and impartial verdict. I think that the integrity of the jurors has been upheld. I think that little incident is an isolated incident, which I think the two jurors that knew about it outside of Ann— is it Gray, Ms. Gray [the alternate to whom the substance of the conversation was related] and Mr. Schweitzer and Ms. McKie, all thought it was just, thought nothing of it and I'm sure—I did ask the two, Mr. Schweitzer and Ms. McKie, whether that in any way impaired their ability to listen to all the evidence in the case, evaluate it fairly and render a fair and impartial verdict based on that evidence. They all answered in the affirmative.[15] I'm satisfied that the incident that occurred with Trooper Ridgell was completely inadvertent, innocent and certainly was not a

---

15. The exact question put to Mr. Schweitzer and his answer were as follows:

Q. [The Court]: Alright. Now knowing all that, the fact she spoke to him, do you feel you could sit on this jury and continue to consider all the evidence and render a fair and impartial verdict?
* * * * * *
A. [By Mr. Schweitzer]: Yes.

A similar exchange occurred with Ms. McKie:

Q. [The Court]: Now, after listening to all this, do you think that in any way would effect [sic] your ability to sit on this jury, listen to all the evidence, evaluate it and render a fair and impartial verdict just based on the evidence?

A. [Ms. McKie]: I don't think that would have any bearing, Your Honor.

The court's choice of words aside, it is clear that those jurors indicated an ability to continue to serve and render a fair and impartial verdict.

willful and deliberate act. Therefore, I am denying your motion for a mistrial, but I will excuse Ms. Jackson [the female juror] and Ann Gray.

The second incident related to the Nigerian translator. During his examination, the translator mentioned the prior wiretap investigation in Baltimore County, in which he had been involved, also as a translator. Consequently, appellants moved for a mistrial. The trial court denied the mistrial request but propounded a curative instruction to the jury:

Alright, ladies and gentlemen, what I'm about to say to you I want you to please keep this in mind and to obey my order that I'm about to give you. You heard that testimony, that last little session between Mr. Marcus and Mr. Tabansi. Any of that testimony, all of the testimony started with the point where they were talking about who was Jerry and who was Henry and the comments about Texas and drugs and everything else, you are to completely disregard that. It is not relevant to this case. You are not even to consider it. You are to take and strike it out of your mind.

Sometimes these things occur when it's a heated exchange between the attorneys and the witness. You are also to disregard, and this is—take this as a fact, number one, that Mr. Ezenwa was not or did not have drugs with him in Baltimore. That is untrue, did not have them, and secondly, the case was dismissed.

It's best that you just [put]—that whole that last colloquy between Mr. Tabansi and Mr. Marcus out of your mind completely. Do not even consider it at all in your deliberations.[16]

Whether to grant or deny a mistrial is a matter addressed to the sound discretion of the trial court. *Guesfierd v. State*, 300 Md. 653, 658, 480 A.2d 800 (1984); *Wilhelm v. State*, 272 Md. 404, 429, 326 A.2d 707 (1974);

---

**16.** The reference by the translator was to the arrest of Ezenwa. All of the appellants moved for a mistrial, however.

*Tibbs v. State*, 72 Md.App. 239, 253, 528 A.2d 510, *cert. denied*, 311 Md. 286, 533 A.2d 1308 (1987). Because it is an extraordinary measure, it should only be granted where manifest necessity as opposed to light or transitory reasons, is shown. *U.S. v. Perez*, 9 Wheat., 579, 580, 6 L.Ed. 165 (1824); *Cornish v. State*, 272 Md. 312, 316–17, 322 A.2d 880 (1974); *Russell v. State*, 69 Md.App. 554, 562, 518 A.2d 1081 (1987).

█ In the first case, the court, after conducting an investigation, excused the affected juror and an alternate to whom that juror had spoken. It was satisfied that the rest of the jury remained untainted. We do not find that action and determination to have been an abuse of discretion.

█ In the second case, the court gave a curative instruction to the jury. We presume that jurors are able to, and do, follow instructions given by the court. *Tibbs*, 72 Md.App. at 252, 528 A.2d 510; *Brooks v. State*, 68 Md.App. 604, 613, 515 A.2d 225 (1986), *cert. denied*, 308 Md. 382, 519 A.2d 1283 (1987). That is no less true of curative instructions. Consequently, we think that appellants' concerns were adequately met and any prejudice or harm that the reference to the Baltimore prosecution and arrest might have done by was cured.

SENTENCE FOR CONSPIRACY TO DISTRIBUTE HEROIN VACATED; JUDGMENT OF CONVICTION FOR CONSPIRACY TO IMPORT HEROIN AFFIRMED.

COSTS TO BE PAID BY APPELLANTS.