506 A.2d 1202
**Augustine TAMBURELLO & Vicki Lynn Rose**

v.

**STATE of Maryland.**

**No. 923, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

April 7, 1986.

Michael E. Marr (Marr & Bennett, on brief), Baltimore, for appellants.

Deborah K. Chasanow, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Kurt L. Schmoke, State's Atty. for Baltimore City and Andrea Smith, Asst. State's Atty. for Baltimore City, on brief), Baltimore, for appellee.

Argued before WILNER, GARRITY, and ROSALYN B. BELL, JJ.

WILNER, Judge.

Largely upon evidence seized from their home, appellants were charged with and, after a jury trial in the Circuit Court for Baltimore City, convicted of possession of cocaine in sufficient quantity to indicate an intent to distribute. Appellant Rose was also convicted of possession of marijuana. From those convictions and the jail sentences imposed in consequence of them, appellants bring this appeal. They raise five issues, four of them relating to the warrant issued on March 31, 1984, that authorized the search of their home.[1] We shall consider those issues together.

---

1. The precise complaints made by appellants are as follows:

"A. The lower court erred in refusing to suppress evidence seized pursuant to an invalid search warrant

1. The warrant is invalid under the *Gates/Upton* test for review of probable cause

2. A search warrant that lists handguns as one category of items being concealed in the dwelling is unconstitutionally broad and per se invalid under the protection of the Fourth Amendment when there is not one single fact in the affidavit supporting any inference that any weapon of any kind was or could be used in the crime alleged

3. The good faith exception to the exclusionary rule does not permit the use of evidence seized pursuant to a warrant that is so lacking in factual basis for a probable cause distinction that no officer could reasonably rely on that warrant

    a. The bare bones exception to the good faith exception applies to the warrant in toto

    b. Because there was not one fact supporting any probable cause determination of the existence of any weapons, reliance upon a

The application for the warrant by Officer Douglas Biales was based primarily upon information obtained "during the month of March 1984" from a confidential informant, who, among other things, (1) described appellants, (2) stated that they worked at a restaurant known as Gringos at 200 South Haven Street and that they lived together at 208 South Grundy Street, and (3) stated that appellants sold cocaine from both the restaurant and their home and that he had "snorted and injected cocaine on numerous occasions within the recent past, which has been purchased from the above described persons and locations...." Some of the information supplied by the informant was confirmed by the police, who conducted a surveillance at Gringos. Biales recounted:

"During the weeks of 11, 18 and 25 March 84 your affiant and other members of the Baltimore Police Department conducted observations at Gringos, located at 200 S. Haven Street and 208 S. Grundy Street.

Observed at these locations were numerous persons entering the restaurant, Gringos. These persons would enter the establishment[,] stay a few minutes and then leave. This type of activity is unusual for a restaurant and/or bar, and is commonly recognized as being indicative of narcotics traffic. At certain times, vehicles would double park outside Gringos and one occupant of the vehicle would enter the establishment, stay a few minutes and then leave. This activity is also recognized as being indicative of narcotics traffic. During observation at 208 S. Grundy Street, persons were observed approaching this

warrant that included a reference to weapons was inherently unreasonable

4. Under the good faith exception to the exclusionary rule, a judge or magistrate abandons his neutral and detached status by interrogating the informant in consideration of the issuance of the search warrant

B. Assuming arguendo that the weapons should not have been suppressed, it is reversible error to allow the introduction into evidence, over objection, of weapons in a drug case, where those weapons relate to no issue to be proven in the case and are overwhelmingly prejudicial to the jury"

dwelling, knocking at the door and entering. These persons would then leave the dwelling within minutes and walk to Gringos, located at 200 S. Haven Street. Once at Gringos these persons would enter, stay a few minutes and then leave. Once again this activity is recognized as being indicative of narcotics traffic."

As part of the application, Officer Biales stated:

"At 2330 hrs p.m. on 31 March 84, your affiant, in an effort to clearly focus on the reliability of the informant, because of his/her lack of extensive prior track record, have presented the informant and affiant before the signing judge, to swear under oath to the information attributed to the affiant by the informant in this affidavit and be subject to cross examination by the signing judge. The declaration under oath consisted of the information contained in the affidavit; beginning at 2330 p.m. and ending by 2340 p.m."

The ten-minute appearance before the District Court judge, at 11:30 in the evening, was not recorded, and no notes were taken of it. At a subsequent suppression hearing, Officer Biales stated that the judge reviewed the warrant, questioned him [the officer] "and he questioned the informant briefly...." Although Biales could not recall precisely the conversation between the judge and the informant, he remembered that the judge put the informant under oath and asked "if the informant was familiar with all the facts contained in the warrant. The informant replied yes." There is no indication that the judge learned anything from the informant that was not stated in the application.

In *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983), the Supreme Court restated some of the principles governing the issuance of search warrants and appellate review of those warrants:

"The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, in-

cluding the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed."

■ In performing our review function, moreover, we are enjoined not to "invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner." *Gates* at 236, 103 S.Ct. at 2331, quoting *United States v. Ventresca,* 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965).

■ Extended discussion with respect to the adequacy of Officer Biales's application is unnecessary. Read in a "commonsense manner," it supplied ample probable cause to justify the issuance of the warrant. Appellants' particular complaint about the authorization for the police to search for handguns was not raised either in their motion to suppress or at the hearing on the motion, and we shall therefore not consider it in this appeal. Md.Rule 1085.

There is one aspect of appellants' complaint about the warrant that bears further comment—that having to do with the appearance of the informant before the judge. They argue that "[u]nder the good faith exception to the exclusionary rule, a judge or magistrate abandons his neutral and detached status by interrogating the informant in consideration of the issuance of the search warrant."

■ We find no merit whatever to that proposition. The Fourth Amendment, to be sure, requires that the issuing magistrate be a "neutral and detached judicial officer" rather than a "law enforcement officer 'engaged in the often competitive enterprise of ferreting out crime.' " *Lo-Ji Sales, Inc. v. New York,* 442 U.S. 319, 326, 99 S.Ct. 2319, 2324, 60 L.Ed.2d 920 (1979), quoting *United States v. Chadwick,* 433 U.S. 1, 9, 97 S.Ct. 2476, 2482, 53 L.Ed.2d 538 (1977), and *Johnson v. United States,* 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948). *See also Coolidge v.*

*New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). But we see no basis for the assertion that a judge loses that "neutral and detached" status simply by a brief interview with an informant whose statements are otherwise included in the application.

■ We do point out, however, that, in determining whether probable cause exists to issue a warrant, the judge, *under Maryland law,* is confined to the averments in the affidavit accompanying the application for the warrant, which must be in writing. *Collins v. State,* 17 Md.App. 376, 381, 302 A.2d 693 (1973); *Valdez v. State,* 300 Md. 160, 476 A.2d 1162 (1984); Md.Code Ann. art. 27, § 551; *compare* 2 LaFave, *Search and Seizure,* § 4.3(b), observing that "it has often been held that reliance upon oral testimony does not violate the Fourth Amendment." It would therefore be inappropriate for a judge to consider, as part of a probable cause determination, information obtained from other sources, including oral pronouncements of an informant that are not included in the affidavit.

■ There is no evidence that any such thing occurred here, however. From the record before us, it appears that all the informant did was to confirm the statements attributed to him in Officer Biales's affidavit, thereby making him, in effect, a co-affiant. What the judge gained from the interview was merely a better appreciation of the informant's credibility, not additional factual information. That, we think, is not inconsistent either with the judge's role as a neutral and detached judicial officer or with the requirement that the judge consider only the factual averments in the affidavit. Indeed, to the extent that the affidavit relies in any significant way on the otherwise hearsay statements of a confidential informant, appearance of the informant before the judge and his/her confirmation of those statements under oath is a welcome thing; it addresses directly and helps measureably to alleviate the concerns about reliance on the hearsay statements of such informants expressed in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12

L.Ed.2d 723 (1964), and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

■ It may or may not be helpful, in cases where an informant is brought before the judge, for some written memorandum to be made of what transpired in order that a reviewing court might have some evidence bearing on the question of whether the issuing judge really confined himself to the affidavit. Despite a contrary view in some States, *see* 2 LaFave, *supra,* § 4.3(b), we see no reason to require such a memorandum. Warrants are often obtained late at night away from the courthouse, as this one was, and, if evidence of what transpired is needed, the testimony of the officer or the judge will suffice. A memorandum, if prepared carefully, may be of assistance in refreshing recollections or serving as a past recollection recorded for evidentiary purposes, but we see no reason to insist upon it as a prerequisite for issuing a warrant.

Appellants' final complaint concerns the admission into evidence of five guns seized from their house pursuant to the warrant. They argue that, as they were not charged with illegal possession of the weapons, the guns were not relevant as evidence and, even if relevant, the prejudicial effect of their admission outweighed any probative value they might have had.

■ The principal evidence against appellants consisted of the 18 bags of cocaine, together with some ionositol (described as a "cutting agent"), razor blades, and spoons seized from their home. Although they denied that the cocaine was theirs, they also suggested, alternatively, such cocaine as might be theirs was for personal use and not for distribution.[2] In that regard, Officer Biales, whom appellants conceded was an expert in narcotics and their distribution, testified that the presence of the five weapons—three rifles and two handguns—was "consistent with distribution of drugs." He explained:

---

2. Some cocaine was found in appellant Rose's purse.

"There is a lot of money to be made in narcotics, and because people who distribute narcotics have basically the business, it is a source of income for them and they want to protect their investment. So, someone has an ounce of Cocaine and selling Cocaine, there is a problem when you sell with these people coming to your house, or sometimes you meet them on the street. Basically, they have knowledge who is selling Cocaine. Therefore, they know somewhere you have Cocaine."

Under the circumstances, we find no error either in the testimony concerning the guns or in the admission of the guns themselves.

JUDGMENTS AFFIRMED; APPELLANTS TO PAY THE COSTS.