573 A.2d 56

**Richard VANDEGRIFT, Sr.**

**v.**

**STATE of Maryland.**

**No. 1221, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

May 4, 1990.

618

**620**

Robert N. Dugan, Assigned Public Defender, Towson (Alan H. Murrell, Public Defender, Baltimore, on the brief), for appellant.

Jillyn K. Schulze, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and John L. Scarborough, State's Atty. for Cecil County, Elkton, on the brief), for appellee.

Argued before ROSALYN B. BELL, KARWACKI and WENNER, JJ.

WENNER, Judge.

Appellant, Richard Vandegrift, Sr., was convicted by a jury in the Circuit Court for Cecil County (Rollins, E.D.E., Jr., J. presiding) of numerous narcotics offenses. The court sentenced him to a total of forty-five years imprisonment, plus fines totaling $40,000. Upon appeal, appellant raises a plethora of issues. He urges us to hold that:

 I. The circuit court erred by denying his motion to suppress the evidence that was obtained pursuant to an order authorizing a wiretap.

 II. The circuit court erred by denying his motion to suppress evidence that was obtained pursuant to several search and seizure warrants.

III. Judge Rollins should have recused himself from deciding all motions and from presiding at trial.

IV. The circuit court erred by failing to require the State to disclose the identity of a confidential informant or, in the alternative, having an *in camera* disclosure.

V. The circuit court abused its discretion by admitting certain opinion evidence.

VI. The circuit court erred by permitting several handguns seized from Roy Reeps in Pennsylvania to be displayed to the jury.

VII. He was unfairly prejudiced by certain hearsay evidence.

VIII. The circuit court improperly admitted a chemist's report without a proper chain of custody.

IX. The circuit court erred in admitting into evidence certain telephone records.

X. The circuit court erred by requiring him to read to the jury from a transcript of [an] electronically recorded interception.

XI. The evidence was insufficient to support his convictions.

XII. The circuit court erred by failing to grant a mistrial due to the State's improper argument to the jury.

XIII. His convictions for conspiracy to distribute should merge with his conviction for conspiracy to import.

We agree that there was not sufficient evidence to sustain appellant's conviction for the distribution of marijuana. We also agree with appellant's argument with regard to the issue of merger. Otherwise, we shall affirm the judgments of the Circuit Court.

To set the stage for the discussion that follows, we shall, at the outset, introduce the principle characters. Maryland State Police Corporal Sandra M. Kestner and Trooper First

Class Charlie P. Alvear were the chief investigating officers. Lieutenant Richard G. Mobley of the Cecil County Sheriff's Department prompted the investigation by relaying to Kestner and Alvear information furnished by a confidential informant. Lieutenant Mobley also assisted in the investigation.

Appellant, his son, Richard Vandegrift, Jr., his daughter, Irene Vandegrift, and appellant's girlfriend, Brenda Wheatley, were the subjects of an ongoing investigation into what the police believed to be a complex drug distribution network. Roy Reeps, a Pennsylvania resident, was also a target of the investigation.

James Tibbett "Tippy" Poore was the State's chief witness. Early in the investigation, Poore was arrested for, and subsequently convicted, of possession of cocaine with intent to distribute. Prior to his arrest, Poore had been a key player in the drug distribution network.

Further facts will be developed as necessary for the disposition of the issues presented by appellant.

## I.

The circuit court granted an *ex parte* order authorizing the interception of telephone communications at the residence of appellant and that of appellant's son. Appellant and his co-defendants moved to suppress all evidence secured by electronic surveillance. After a lengthy pre-trial hearing, Judge Rollins denied the motion. Upon appeal, appellant asserts that this ruling is incorrect for two reasons. First, he contends that the police failed to show in the application for electronic surveillance and the supporting affidavits that other investigative procedures had been exhausted before they sought the order. Second, appellant contends that the interception lasted five days longer than it should have. We reject both contentions.

### Exhaustion

An application for an order authorizing the interception of electronic communications must contain, in part, a full and complete statement of other investigative procedures that had been tried and had failed, or why such procedures reasonably appear to be unlikely to succeed or would be too

dangerous if tried. Md.Cts. & Jud.Proc.Code Ann. § 10–408(a)(3) (1989 Repl.Vol.). The underlying purpose of this requirement is to guard against the use of electronic surveillance as an initial investigative tool. *Bell v. State*, 48 Md.App. 669, 674–675, 429 A.2d 300, *cert. denied*, 291 Md. 771 (1981). However that may be, it is not necessary that the State exhaust every possible investigative technique prior to seeking the order. *Salzman v. State*, 49 Md.App. 25, 33, 430 A.2d 847, *cert. denied*, 291 Md. 781 (1981). There is sufficient need for electronic surveillance where, in light of the objectives of the investigation, it appears that normal investigative techniques have been unsuccessful and, if continued, would be unlikely to yield the evidence sought. With these precepts firmly in mind, we have reviewed the application and supporting affidavits and find them to be sufficient to demonstrate the need for electronic surveillance.

■ According to the affiants, the overall objective of their investigation was to ascertain the identity and degree of involvement of any "higher-ups," co-conspirators, and sources of supply of the illegal drug operation. The affidavits recited in detail that traditional investigative techniques had been employed but had failed to yield those objectives. Intermittent stationary and mobile surveillance at numerous locations had failed to reveal the identity of higher-ups and sources of supply. Nor did the use of pen registers and toll billing reveal this information. The confidential informant was unable to identify sources of supply and those "higher-ups" other than appellant. Numerous other police agencies contacted by the affiants had no knowledge of the drug distribution network or any of its known participants.

Furthermore, the affiants listed various investigative tools which were not used because they either appeared unlikely to succeed or might jeopardize the investigation. Search and seizure warrants were not initially sought because it was not known whether the participants had in their possession narcotics, records, ledgers, or other incriminating evidence. The confidential informant was not willing to testify, and it was unlikely that other participants would come forward or could be approached without endan-

gering the investigation. A "blind buy" was thought to be impractical because the participants were known to be reluctant to deal with persons with whom they were not acquainted. Moreover, visual surveillance was terminated once such surveillance began to arouse the suspicion of the suspects.

The affiants were officers experienced in the investigation of violations of narcotics laws. Where, as here, the objective of an investigation is to seek evidence regarding "higher-ups," co-conspirators and sources of supply in a drug distribution network, we think that the failure of the investigative procedures we have just recounted are more than sufficient to comply with the exhaustion requirement.

### Duration

Authorization to intercept communications over the targeted telephone lines began on July 19, 1988, and ended on August 17, 1988. In his brief appellant posits that the interception should have ended on August 7, 1988. Why this is so we are not told. We hasten to remind appellant that he is required to support his position with some kind of cognizable argument as well as the facts material to its resolution. Md. Rule 8–504(a)(4) and (5).

■ Notwithstanding this lack of illumination, although we are not required to do so, we have reviewed the record and have located what we believe to be the crux of appellant's argument. Appellant asserts that, inasmuch as Corporal Kestner said that she had sufficient information as of August 7 to begin drafting an application for a search and seizure warrant, the interception should have ended on that date. We find this argument to be utterly without merit. In the first place, there is no indication that as of August 7 the objectives of the investigation had been achieved. In the second place, that there was sufficient evidence available on August 7 to support the issuance of a search and seizure warrant does not, in our view, preclude the State from continuing electronic surveillance within the confines of the order. *See United States v. Clerkley*, 556 F.2d 709, 714 (4th Cir.1977), *cert. denied, Genco v. United States*, 436 U.S. 930, 98 S.Ct. 2830, 56 L.Ed.2d 775 (1978), *London v. United States*, 436 U.S. 930, 98 S.Ct. 2830, 56 L.Ed.2d 775.

(1978), and *Shade v. United States*, 436 U.S. 930, 98 S.Ct. 2830, 56 L.Ed.2d 775 (1978) (in investigation of gambling operation, fact that the government has ample evidence to arrest known participants does not preclude it from seeking wiretap order to uncover names of bookmakers and other co-conspirators). Moreover, we note that the police did terminate interception five days early, on August 12, because in their judgment further interception would have been fruitless.

## II.

The circuit court denied appellant's motion to suppress certain evidence seized pursuant to the execution of numerous search and seizure warrants. This, according to appellant, constitutes reversible error. Appellant mounts a three-pronged attack on the validity of those warrants: (1) the affidavits are deficient in that they failed to establish the veracity and basis of knowledge of the confidential informant; (2) the affidavits are deficient because they provide only a summary of the content of the intercepted telephone communications rather than a recitation of the conversations in their entirety; and (3) Judge Rollins, having earlier issued the order authorizing electronic surveillance, was not a neutral and detached magistrate.

Appellant's contention that the warrants failed to set forth the veracity and basis of knowledge of the confidential information is without merit. The application and affidavits for the earlier order authorizing electronic surveillance were, for the purpose of establishing probable cause, attached to and incorporated in the application for the search and seizure warrants. There, it was averred that Lieutenant Mobley had used information furnished by the informant on previous occasions to obtain the successful prosecution of numerous criminal cases. Lieutenant Mobley had never found information supplied by the informant to have been false or misleading. The affiants independently confirmed the accuracy of much of the information given to them by the informant. *See Comi v. State*, 26 Md.App. 511, 338 A.2d 918, *cert. denied*, 276 Md. 740 (1975) (that informant had given truthful and accurate information regarding other criminal cases to affiant and other officers,

and affiant had independently verified information furnished by informant, sufficiently established informant's credibility). Moreover, while it is clear that not all of the informant's knowledge was based upon personal observation, that the informant provided other information regarding the operation of the distribution network in such detail was enough to have led the officers to conclude that he spoke from personal knowledge. *Id.* at 515–516, 338 A.2d 918. We think that the veracity and basis of knowledge of the confidential informant were sufficiently shown.

■ We see no basis for appellant's assertion that the affidavits are deficient because they do not recite verbatim the contents of the telephone interceptions. The affiants averred their expertise and familiarity with the actions, habits, traits and terminology commonly used by drug traffickers. There is nothing objectionable, for the purpose of establishing probable cause, in the affiants having summarized the information gained through electronic surveillance. Appellant does not refer us to any cases or other authority indicating otherwise.

■ Finally, we find no merit to the contention that Judge Rollins, having earlier issued the order authorizing electronic surveillance, somehow was no longer a neutral and detached magistrate. The purpose of the requirement that the magistrate issuing a warrant be a neutral and detached judicial officer is to ensure that the determination of probable cause be made by someone other than the "law enforcement officer engaged in the often competitive enterprise of ferreting out crime." *Tamburello v. State,* 67 Md.App. 180, 186, 506 A.2d 1202 (1986) (*quoting Lo–Ji Sales, Inc. v. New York,* 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979), and *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), and *Johnson v. United States,* 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948)). There is no indication in the record that Judge Rollins was a player in this investigation, nor is there any indication that he had a stake in its outcome. Moreover, a finding by a judicial officer of probable cause that particular communications regarding narcotics offenses will be obtained through electronic surveillance is different from,

and does not guarantee, a subsequent finding by that same judicial officer of probable cause that the targeted premises and persons are concealing certain physical evidence. And, as we see it, the totality of the circumstances supports a finding that there was sufficient probable cause to believe that evidence of narcotics offenses would be found on the premises and persons named in the warrants. *Best v. State,* 71 Md.App. 422, 426, 526 A.2d 75, *cert. denied,* 311 Md. 20, 532 A.2d 167 (1987), *cert. denied,* 485 U.S. 978, 108 S.Ct. 1274, 99 L.Ed.2d 485 (1988) (*citing Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), and *Potts v. State,* 300 Md. 567, 479 A.2d 1335 (1984)).

### III.

Appellant asserts that Judge Rollins, having earlier issued the order authorizing electronic surveillance and the issuance of search warrants, should have recused himself from presiding over the suppression hearing and the trial.

 We decline to address the propriety of Judge Rollins having presided over the trial inasmuch as that question was neither raised in nor decided by the circuit court. Md.Rule 8–131(a). As to his having ruled on appellant's motions to suppress, we think that *Trussell v. State,* 67 Md.App. 23, 506 A.2d 255, *cert. denied,* 306 Md. 514, 510 A.2d 260 (1986), is dispositive. In *Trussell,* we held that a warrant-issuing judge is not disqualified from presiding over a later suppression hearing involving the validity of that warrant absent a showing of bias or prejudice on the part of the judge. *Id.* at 28–29, 506 A.2d 255. We see little, if any, distinction between *Trussell* and circumstances where, as here, a judge is also called upon to review the propriety of his previous decision to issue an order authorizing electronic surveillance. In both instances,

"[t]he action in issuing the warrant [or order] is ex parte and merely appraises the prima facie showing of probable cause. The motion proceeding is adversarial, and the judge adjudicates all questions of law and fact posed on the challenge of the validity of the warrant [or order]."

*Id.* at 27, 506 A.2d 255 (*quoting State v. Smith,* 113 N.J.Super. 120, 273 A.2d 68, *cert. denied,* 59 N.J. 293, 281

A.2d 806 (1971)). There has been no showing in the case *sub judice* that Judge Rollins' ruling on the motions to suppress was tainted by personal bias or prejudice. The fact that a judge complies with the statutory requirement periodically to review progress reports regarding electronic surveillance does not, in our view, per se render that judge biased or prejudiced. *See* Md.Cts. & Jud.Proc.Code Ann. § 10–408(f) (1989 Repl.Vol.).

## IV.

Appellant next argues that the circuit court should have compelled the State to disclose the identity of the confidential informant. We disagree.

■■■ Where the informant is neither a participant, accessory, nor a witness to the offense, there is no requirement that the informant's identity be disclosed. *Howard v. State,* 66 Md.App. 273, 286, 503 A.2d 739, *cert. denied,* 306 Md. 288, 508 A.2d 488 (1986). At the suppression hearing, appellant proffered that the information furnished by the informant was "so detailed and specific that it's hard for [defense counsel] to fathom any situation where that person would not have been involved in this illegality at one stage or another." That an informant provides detailed information is not, by itself, sufficient to support the conclusion that the informant participated in the criminal activity. *Id.* at 288–289, 503 A.2d 739. Furthermore, the circuit court specifically asked the State if the informant was "in any way involved with any of the alleged illegal actions," to which the State replied in the negative. Moreover, none of the information furnished by the informant was utilized by the trier of fact in deciding the case. *Id.* at 286, 503 A.2d 739. The State averred that the informant's role in the investigation was for the limited purpose of establishing probable cause for the issuance of the electronic surveillance order and search warrants, and in no way involved the guilt or innocence phase of the trial.

■■■ On the other hand, where an informant is a participant in the alleged illegality, such participation becomes a

factor to be considered in determining whether disclosure is necessary and relevant to a fair defense. *DeLuca v. State,* 78 Md.App. 395, 406, 553 A.2d 730, *cert. denied,* 316 Md. 549, 560 A.2d 1118 (1989) (*quoting Nutter v. State,* 8 Md.App. 635, 262 A.2d 80 (1970)). Even if we were to assume, for the sake of argument, that the informant may well have been involved in the illegal activity, appellant has failed to show that the identity of the informant was necessary and relevant to a fair defense. *Howard, supra,* 66 Md.App. at 285, 503 A.2d 739. Appellant at no time articulated why non-disclosure would impair his defense. As we see it, appellant's bald allegation that the informant was at some time involved in the drug distribution network is not enough for us to conclude that the informant's identity was vital to a fair defense.

There was no error in permitting the State to withhold the identity of the confidential informant.

## V.

Appellant argues that Lieutenant Mobley and Corporal Kestner improperly invaded the province of the jury when Judge Rollins permitted them to give expert opinions. For a number of reasons, we find no error.

At the outset, we reject appellant's invitation to engage in an unguided journey through the entire record to address "each and every instance" of objectionable opinion evidence. We remind appellant that we are not required to ferret out from the record factual support favorable to his argument. Md.Rule 8–504(4). Consequently, we will confine our discussion to the admissibility of the opinion testimony enumerated by appellant in his brief.

Two of appellant's complaints need not long detain us. Lieutenant Mobley opined that the white powdery substance he found in the ammunition box at Wapiti Farms was cocaine.[1] Appellant objected to that testimony on the grounds that during pre-trial discovery Lieutenant Mobley had not been named by the State as an expert witness

---

1. *See infra,* Issue XI, "Count Ten."

whom it intended to call at trial. Later, appellant objected to a question propounded by the State to Corporal Kestner on the grounds that the question was leading. Consequently, having voluntarily offered those specific grounds for his objections, appellant has effectively waived his right to argue that this evidence should have been excluded because it invaded the province of the jury. *von Lusch v. State,* 279 Md. 255, 263, 368 A.2d 468 (1977).

The balance of the opinion evidence objected to by appellant involves Corporal Kestner's explanation of the significance of some of the intercepted telephone communications and her opinion as to appellant's role in the drug distribution network.

The admissibility of expert testimony is left largely to the discretion of the trial judge, whose decision will not be disturbed on appeal absent an abuse of that discretion. *Simmons v. State,* 313 Md. 33, 41, 542 A.2d 1258 (1988). An expert opinion is admissible even if it relates to an issue of ultimate fact, provided the opinion is of some aid to the trier of fact. *White v. State,* 66 Md.App. 100, 114, 502 A.2d 1084 (1986). And, "when the subject under investigation requires special skill and knowledge, [the jurors] may be aided by the opinion of persons whose pursuits or studies or experience, have given them a familiarity with the matter in hand." *Simmons, supra* [313 Md.] at 42, 542 A.2d 1258 (*quoting Baltimore & Yorktown Turnpike Road Co. v. Leonhardt,* 66 Md. 70, 5 A. 346 (1886)).

Corporal Kestner's qualifications and experience in investigating narcotics offenses are set forth at length in the record. And, as we have said, Corporal Kestner is familiar with the actions, habits, traits, and terminology commonly used by drug traffickers. Where, as here, the distribution network was complex, and the intercepted communications were vague, fragmented, and interspersed with street slang, we think Corporal Kestner's opinion testimony aided the jury rather than usurped their role as factfinder. Moreover, the jurors listened to and were provided with transcripts of recordings of the intercepted telephone communications from which they were free to draw their own conclusions. There was no abuse of discretion.

## VI. and XII.

Appellant asserts that the circuit court erred by failing to grant two separate motions for mistrial. We disagree.

The circuit court is given broad discretion in determining whether a motion for mistrial should be granted. *Wilhelm v. State*, 272 Md. 404, 429, 326 A.2d 707 (1974). *See also Johnson v. State*, 303 Md. 487, 516, 495 A.2d 1 (1985), *cert. denied*, 474 U.S. 1093, 106 S.Ct. 868, 88 L.Ed.2d 907 (1986). In the exercise of that discretion, the trial judge's decision denying a mistrial will not be disturbed on appeal unless there has been a clear showing of prejudice to defendant. *See Wilhelm, supra* [272 Md.] at 429, 326 A.2d 707. *See also Hickman v. State*, 76 Md.App. 111, 120, 543 A.2d 870 (1988). Moreover, we have reaffirmed that a mistrial should be declared only under "extraordinary circumstances" and where "manifest necessity" requires it. *Id. See also Cornish v. State*, 272 Md. 312, 320–322, 322 A.2d 880 (1974) (discussing the requirement of "manifest necessity" to declare a mistrial).

With this standard of review firmly in mind, we shall address separately appellant's motions for mistrial.

### Handguns

Appellant contends that the circuit court erred by permitting handguns seized from Roy Reep's residence in Pennsylvania to be displayed to the jury. Appellant asserts that because of that error a mistrial should have been granted. We disagree.

■■■ Appellant argues that the display of the handguns in close proximity to the jurors was inflammatory. However that may be, Judge Rollins gave an extensive curative instruction to the jury. Judge Rollins concluded his instruction by explaining to the jury that:

There was no reason why the man can't have guns or own them, and there's no evidence to indicate that because he owned guns that that makes him a dealer in drugs or a part of a conspiracy. You know, it's just, there's just nothing to it.

We find that the curative instruction as a whole was sufficient to avoid any clear prejudice to defendant. *See*

*Wilhelm, supra,* [272 Md.] at 429, 326 A.2d 707. We do not find any abuse of discretion by Judge Rollins. Appellant's motion for mistrial on the issue of the handguns was, therefore, properly denied.

### State's Closing Argument

■ Appellant also contends that the State made an improper closing argument by telling the jurors that their decision "sends certain messages back into our society." Appellant argues that the circuit court erred in denying his motion for mistrial. We find no error.

Maryland courts have held that, subject to the trial court's discretion, "both the State's Attorney and defense counsel are given wide latitude in the conduct of closing argument...." *Trimble v. State,* 300 Md. 387, 405, 478 A.2d 1143 (1984), *cert. denied,* 469 U.S. 1230, 105 S.Ct. 1231, 84 L.Ed.2d 368 (1985). And, there are "no well-defined bounds beyond which the eloquence of an advocate shall not soar." *Wilhelm, supra,* [272 Md.] at 413, 326 A.2d 707. In fact, remarks similar to those made by the State in the case *sub judice* have been found to be appropriate and not grounds for a mistrial. *See Id.* at 431–436, 326 A.2d 707 (and cases cited therein).

Appellant further asserts that the circuit court erred in failing to take appropriate action to mitigate the effects of the State's remarks to the jury. Although Judge Rollins did not give any curative instruction to the jury in this regard, the failure to instruct the jury to disregard certain comments is not ordinarily, by itself, considered to be judicial error. *See Wilhelm, supra,* at 438, 326 A.2d 707. And, of course, absent a clear showing of prejudice to the defendant, the trial judge's discretion in denying a mistrial will not be disturbed on appeal. *See Hickman, supra,* 76 Md.App. at 120, 543 A.2d 870. We find no abuse of discretion by Judge Rollins in refusing to grant appellant's second motion for mistrial.

### VII.

■ The State elicited from Trooper First Class Alvear that he had obtained a register receipt from a local grocery

store indicating that appellant's daughter, whom the officer had observed leaving the store, had purchased plastic baggies. Appellant promptly objected on grounds that the evidence was hearsay. After a brief bench conference Judge Rollins agreed and instructed the jury as follows:

Ladies and gentlemen, I caught the part about the receipt, but I didn't hear what else was said. But anyway, I'm not allowing that in evidence, and I'm granting the defendant's objection because it is hearsay evidence. So any evidence that the Officer's given as to what he got in the store or what was bought in the store, please disregard it. I'm striking it from the record.

"It is presumed that a jury can and will follow [curative instructions]." *Brooks v. State,* 68 Md.App. 604, 613, 515 A.2d 225 (1986), *cert. denied,* 308 Md. 382, 519 A.2d 1283 (1987). As we see it, any prejudice to appellant resulting from the jurors having heard the hearsay evidence complained of was dispelled by the curative instruction.

### VIII.

Sandra A. Hartsock, a forensic chemist, testified without objection that the substance seized from Tippy Poore was 28.7 grams of cocaine with a purity of greater than 95%. Later, the State offered into evidence a chemist's report documenting that analysis. Appellant objected on the grounds that the chain of custody had not been established. Although the chemist's report was not admitted into evidence at that time, it was admitted over defense objection at a later point in the trial. It is the admission into evidence of the chemist's report without a showing of the chain of custody that makes up appellant's eighth claim of error.

Unfortunately for appellant, by the time the chemist's report was admitted into evidence, Ms. Hartsock had already testified, without objection, on direct examination as to its contents. Moreover, on redirect examination she explained at length, again without objection, what is meant by "95% purity" and also explained the commonly used cutting agents. We have carefully reviewed the record and do not find any indication that appellant moved to strike Ms. Hartsock's testimony. Consequently, because

evidence of the contents of the chemist's report had already been admitted without objection, appellant's complaint as to the admissibility of that report has not been preserved for appellate review. *Grant v. State,* 76 Md.App. 165, 171–172, 543 A.2d 897 (1988), *rev'd on other grounds,* 318 Md. 672, 569 A.2d 1237 (1990). Even assuming, for the sake of argument, that it was error to have admitted the chemist's report, in light of Ms. Hartsock's testimony, the report was merely cumulative and its admission was harmless beyond a reasonable doubt. *Id.*

## IX.

Appellant contends that the circuit court erred by admitting into evidence certain telephone records. Specifically, appellant asserts that a proper foundation was not laid as required by Md.Cts. & Jud.Proc.Code Ann. § 10–101 (1989 Repl.Vol.) We disagree.

■ The telephone records were introduced into evidence through David Hoffman, who is both the Security Supervisor for Commonwealth Telephone Company of Pennsylvania and the custodian of the company's telephone records. Hoffman testified that such written telephone records were kept in the ordinary course of business at the telephone company. *See* Md.Cts. & Jud.Proc.Code Ann. § 10–101(b) (1989 Repl.Vol.). In addition, Hoffman testified· that the written telephone records were made as soon as the customer was billed for the service. We find this to be perfectly reasonable. *See* Md.Cts. & Jud.Proc.Code Ann. § 10–101(c) (1989 Repl.Vol.). Accordingly, we conclude that the statutory requirements for the admission of business records were satisfied, and we hold that the written telephone records were properly admitted.

## X.

■ Appellant contends that the circuit court erred when it required appellant to read to the jury a transcribed portion of one of the intercepted telephone communications. We disagree.

Appellant argues that it was unfair and prejudicial to have required him to read from the transcript. In the first

place, appellant asserts that to do so called attention to the fact that appellant did not testify at trial. At the close of trial, however, the circuit court instructed the jury regarding appellant's decision to invoke his constitutional right not to testify. And, the judge reminded the jury that no inference of guilt should be attached to appellant's decision. Moreover, it has long been established that the compelled display of physical characteristics, such as a voice exemplar, does not violate the Fifth Amendment privilege against compulsory self-incrimination. *United States v. Dionisio,* 410 U.S. 1, 5–6, 93 S.Ct. 764, 767–768, 35 L.Ed.2d 67 (1973). *See also United States v. Wade,* 388 U.S. 218, 222, 87 S.Ct. 1926, 1929, 18 L.Ed.2d 1149 (1967) (held that compelling defendant to speak at trial, and "even to utter words purportedly uttered by the [person who committed the crime]" was not testimonial in nature).

In the second place, appellant argues that it was "totally unnecessary" to have him read from the transcript because he had never contended that it was not his voice on the recorded communications. The decision whether to admit the voice exemplar and to have appellant read from a portion of the transcript, however, is a matter left to the sound discretion of the trial judge. *See e.g., Ricks v. State,* 312 Md. 11, 31, 537 A.2d 612, *cert. denied,* —— U.S. ——, 109 S.Ct. 90, 102 L.Ed.2d 66 (1988). *See also United States v. Sutton,* 426 F.2d 1202, 1207 (D.C.Cir.1969). Having appellant read to the jurors was merely an aid to help them to identify appellant's voice. *See Ricks, supra* [312 Md.] at 31, 537 A.2d 612. In addition, the jury heard the recorded telephone conversations and, therefore, could reach its own conclusion as to whether it was appellant's voice on the tapes. *See Id.* There was no abuse of discretion.

## XI.

Appellant contends that there was insufficient evidence to support his convictions for a number of the offenses with which he was charged. We see it somewhat differently.

■ First, we shall address appellant's assertion that there was insufficient evidence to support his conviction as

to Count One, conspiracy to distribute cocaine and Count Five, conspiracy to distribute marijuana. This contention need not detain us long as, upon his motion for judgment of acquittal, appellant did not present or refer to any evidence or argument to support these two contentions. Consequently, they are not preserved for our review. Md.Rule 4–324(a). *See State v. Lyles*, 308 Md. 129, 135–136, 517 A.2d 761 (1986).

We shall address the balance of appellant's complaints separately.

### Count Three

■■■■■ Appellant was convicted of conspiracy to smuggle into the state twenty-eight grams or greater of cocaine. At the outset, it is important to observe that a criminal conspiracy consists of the combination of two or more persons who agree to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means. *Townes v. State*, 314 Md. 71, 75, 548 A.2d 832 (1988). The essential element of a criminal conspiracy is the unlawful agreement. *Id. See also Mason v. State*, 302 Md. 434, 444, 488 A.2d 955 (1985). The agreement need not be formal, as long as there is a "meeting of the minds." *Townes, supra*, [314 Md.] at 75, 548 A.2d 832. And, of course, in Maryland, the crime is complete at the moment the unlawful agreement is reached, and no overt act in furtherance thereof need be shown. *Id.*

■■■■■ It is important also to point out that in establishing a criminal conspiracy, the State need only present facts which would allow the fact finder to infer that the parties entered into an unlawful agreement. *See Rhoades v. State*, 56 Md.App. 601, 612, 468 A.2d 650 (1983), *cert. dismissed*, 300 Md. 792, 481 A.2d 238 (1984). In other words, a criminal conspiracy may be proved by circumstantial evidence. *See Howard, supra*, 66 Md.App. at 281, 503 A.2d 739. *See also U.S. v. Jackson*, 863 F.2d 1168, 1173 (4th Cir.1989).

■■■■ In the case before us, appellant asserts that, because Trooper Seipp did not testify at trial in order to establish the chain of custody of the cocaine seized from

Tippy Poore, the evidence was insufficient to sustain the conviction. As we have already resolved the chain of custody issue in the State's favor, *see supra,* Issue VIII, we shall not rehash what we said there. Suffice it to say that the State produced testimony that the substance seized was 28.7 grams of 95% pure cocaine. Moreover, we find that the evidence obtained from the recorded telephone communications, combined with the corroborating testimony of both Corporal Kestner and Tippy Poore, provided sufficient evidence from which the finder of fact could, beyond a reasonable doubt, infer that appellant engaged in a criminal conspiracy to smuggle into the state a substantial quantity of cocaine.

### Count Seven

Appellant was also convicted of smuggling into the state twenty-eight grams or more of cocaine. Again, appellant asserts that a proper chain of custody was not established as to the cocaine seized from Tippy Poore.

For the reasons we have just explained, *see supra* (discussion of Count Three), we find that the evidence was sufficient to sustain appellant's conviction.

### Count Ten

Appellant was convicted of possession of cocaine with intent to distribute it on May 28, 1988, at Wapiti Farms. Appellant argues that the evidence was insufficient to sustain that conviction because Lieutenant Mobley did not obtain a chemical test of the substance he found in the metal box buried at Wapiti Farms. However that may be, we find that Lieutenant Mobley's experience and training in identifying controlled dangerous substances, along with the corroborating testimony of Tippy Poore, was sufficient to establish that appellant was in possession of cocaine with intent to distribute it.

As a result of information received through the ongoing investigation, Lieutenant Mobley went to Wapiti Farms in North East, Maryland and found a metal ammunition box buried in a hole and covered by some twigs and leaves. The box contained three "ziploc type" plastic baggies filled with a "white compressed powdery substance in chunk form,"

which Lieutenant Mobley, based on his experience and training, determined to be cocaine. Mobley then put the baggies back in the box, returned the metal box back to its hiding place and left the area. Tippy Poore's testimony corroborated that there was a quantity of cocaine hidden at Wapiti Farms and that appellant knew about the hidden cocaine.

We agree with the State that the totality of the evidence reveals that appellant had knowledge and was in constructive possession and control of the cocaine by virtue of his role in the drug distribution network. *See e.g., Henson v. State,* 236 Md. 518, 525, 204 A.2d 516 (1964) (held that possession and control of narcotics need not be "immediate and direct" but may be constructive). Accordingly, we hold that there was sufficient evidence to sustain appellant's conviction for Count Ten.

### Count Eleven

The investigators established surveillance after learning from an intercepted telephone communication that some type of transaction was about to take place. The investigators believed that the transaction involved drugs. Troopers from the Maryland State Police observed two white females in a black and white Oldsmobile arrive at the specified location, which was behind appellant's apartment. Appellant arrived in a silver Mercury Cougar. Carrying a brown paper bag in his hand, appellant approached the females and gave them the bag in exchange for currency.

Appellant argues that his conviction for distribution of marijuana cannot be sustained because the contents of the paper bag was not proven to be marijuana. Under the circumstances *sub judice,* we are constrained to agree.

Although it is true that the police observed the exchange of a brown paper bag for currency, there is nothing in the record from which the jury could have inferred that the bag contained marijuana. The telephone communication did not refer to marijuana, nor did Trooper First Class Alvear interpret the language that was used as indicating that the exchange would involve marijuana. The fact that Tippy Poore testified that appellant was generally engaged in the distribution of marijuana is not, without more, enough to

conclude that the contents of the paper bag was marijuana. Accordingly, we shall reverse appellant's conviction for distribution of marijuana.

## Count Twelve

 Finally, appellant contends that there was insufficient evidence to sustain his conviction for possession of marijuana with intent to distribute it from Brenda Wheatley's trailer in North East, Maryland. We disagree.

Appellant argues that there was no credible evidence to connect him to the marijuana recovered from Wheatley's trailer. The evidence obtained through numerous intercepted telephone conversations, however, indicated that Wheatley was involved with appellant in the drug distribution network. This evidence was corroborated by the testimony of Tippy Poore. And, of course, at least ten pounds of packaged marijuana, along with other drug paraphernalia, was seized from Wheatley's trailer. We conclude that the evidence was sufficient to sustain the conviction.

In reviewing the sufficiency of the evidence to support a criminal conviction the standard which we must apply is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Tichnell v. State,* 287 Md. 695, 717, 415 A.2d 830 (1980), *cert. denied,* 466 U.S. 993, 104 S.Ct. 2374, 80 L.Ed.2d 846 *reh'g denied,* 467 U.S. 1268, 104 S.Ct. 3564, 82 L.Ed.2d 865 (1984) (*quoting, Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original)). We find, in the case before us, that except for Count Eleven, the conviction for distribution of marijuana, that the evidence was sufficient to enable a reasonable trier of fact to conclude that appellant was guilty of each of the remaining offenses with which he was charged.

## XIII.

Appellant's final contention is that his convictions for conspiracy to distribute cocaine (Count 1) and conspiracy to distribute marijuana (Count 5), should merge with his conviction for conspiracy to import cocaine (Count 3). We agree.

■ In determining whether different offenses are the same for double jeopardy purposes, we are accustomed at the outset to applying the "required evidence test." *State v. Jenkins*, 307 Md. 501, 517, 515 A.2d 465 (1986). In short, if each offense contains an element which the other does not, the offenses are not the same for purposes of merger. On the other hand, if all of the elements of one offense are included in the other offense, the former merges with the latter. *Id.*

In the case at bar, the offenses of conspiracy to distribute and conspiracy to import each requires proof of an element which the other does not, i.e., an intent to distribute versus bringing specified amounts of the proscribed drug into Maryland. *See e.g., Rose v. State*, 74 Md.App. 644, 649, 539 A.2d 1142, *cert. denied*, 313 Md. 31, 542 A.2d 858 (1988) (substantive offenses of distribution and importation are not the same for double jeopardy purposes). Hence, under the required evidence test, the offenses do not merge.

■ Nevertheless, where the same act or transaction meets the statutory requirements for different offenses, courts have not ascribed to the Legislature, without clear indication to the contrary, the intent that punishment for the offenses be cumulative. *Jenkins, supra*, at 518, 515 A.2d 465. Under the "rule of lenity," where the intent of the Legislature is unclear, the ambiguity is resolved in favor of merger.

■ Article 27, Section 38 of the Annotated Code of Maryland (1987 Repl. Vol. & Supp. 1989) provides that punishment for a person convicted of conspiracy shall not exceed the punishment of the crime he or she conspired to commit. Sections 286 and 286A of that Article proscribe both the distribution and importation of narcotics. Obviously, the two substantive statutory offenses are directed at two different evils and the Legislature envisioned that sentences for those offenses may be cumulated. *Rose, supra*, at 649–650, 539 A.2d 1142. It is, however, unclear whether the Legislature intended that sentences be cumulative for different criminal acts that result from a single common law conspiracy. Section 38 prescribes generally the punishment for conspiracy and does not expressly relate

to any substantive offense. Nor do sections 286 or 286A themselves provide that conspiracy to distribute or conspiracy to import are separate statutory offenses. Consequently, we hold that appellant's convictions for conspiracy to violate the separate statutory offenses of distributing and importing controlled dangerous substances merge.

Our holding is consistent with *Tracy v. State,* 319 Md. 452, 573 A.2d 38 (1990). There, the Court of Appeals held that Tracy's convictions for conspiracy to commit murder and conspiracy to commit robbery should merge. The Court said that, "[i]t is well settled in Maryland that only one sentence can be imposed for a single common law conspiracy no matter how many criminal acts the conspirators have agreed to commit. The unit of prosecution is the agreement or combination rather than each of its criminal objectives." *Id.,* at 459, 573 A.2d 38. The State's argument that a second conspiracy was created by the conspirators' decision to change which of the two would carry out the intended murder and to change the type of weapon to be used was rejected by the Court. *Id.* In the case *sub judice,* the drug distribution network involved thirteen co-conspirators, and the evidence is not sufficient to show the existence of separate conspiratorial agreements to distribute and import. Moreover, in *Enzenwa v. State,* 82 Md. App. 489, 572 A.2d 1101 (1990), we concluded that conspiracy to import heroin and conspiracy to distribute heroin were not necessarily two separate conspiracies; "they may very well be alternative modes of committing the single crime of conspiracy." *Id.,* at 504, 572 A.2d 1101. In *Enzenwa,* the State had conceded that there was one conspiracy with two objectives.

The State's reliance on *Albernaz v. United States,* 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981), is misplaced. In *Albernaz,* the Supreme Court affirmed the imposition of consecutive sentences for convictions for conspiracy to import and to distribute controlled dangerous substances that arose from participation in a single conspiracy. Unlike Maryland, however, the federal statutes proscribing the importation and distribution of the controlled dangerous substances involved in *Albernaz,* were part of the Compre-

hensive Drug Abuse Prevention and Control Act,[2] that contains provisions proscribing conspiracy to commit those offenses. The Supreme Court, of course, first determined that the separate statutory offenses satisfied the "required evidence test":

> [The sections] specify different ends as to the proscribed object of the conspiracy—distribution as opposed to importation—and it is beyond adventure that "each provision requires proof of a fact [that] the other does not.

101 S.Ct. at 1142. The Court then went on to hold that by enacting two distinct conspiracy statutes, Congress intended to authorize multiple punishments. *Id.* Furthermore, the Court found the statutory provisions to be unambiguous, and held that the "rule of lenity" was inapplicable. *Id.* at 1144.

In sum, it is unclear from § 38, when taken together with §§ 286 and 286A, that the Legislature intended that punishment for conspiracy to commit the statutory offenses of distributing and importing controlled dangerous substances be cumulative. Furthermore, although distributing and importing controlled dangerous substances constitute distinct objectives, in the absence of proof sufficient to establish a second conspiracy, there was merely one continuous conspiratorial relationship. Accordingly, appellant's convictions for conspiracy to distribute cocaine (Count 1) and marijuana (Count 5) should merge into his conviction for conspiracy to import cocaine (Count 3).[3] *Enzenwa, supra,* at 504–505, 572 A.2d 1101.

JUDGMENT AND CONVICTION FOR DISTRIBUTION OF MARIJUANA REVERSED. JUDGMENTS AND CONVICTIONS FOR CONSPIRACY TO DISTRIBUTE COCAINE AND MARIJUANA VACATED. ALL OTHER JUDGMENTS AFFIRMED.

COSTS TO BE PAID ONE-THIRD BY CECIL COUNTY AND TWO-THIRDS BY THE APPELLANT.

---

2. 21 U.S.C. § 801 *et seq.*

3. On Counts 1 and 3, appellant was sentenced to consecutive terms of twenty years imprisonment and ordered to pay a fine of $20,000 in each case. On Count 5, appellant was sentenced to a concurrent term of five years of imprisonment.